## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LECG, LLC<br>2000 Powell Street, Suite 600<br>Emeryville, CA 94608 | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. _____ |
| v. | ) ) ) | |
| THE SENECA NATION OF INDIANS | ) ) | |
| Defendant. | ) ) ) | |

### COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, LECG, LLC ("LECG" or "Plaintiff"), for its Complaint against Defendant, The Seneca Nation of Indians ("Seneca" or "Defendant"), alleges as follows:

1.      This is an action for a declaratory judgment and related legal remedies which arises out of an agreement to provide forensic accounting and consulting services between LECG and Seneca (the "Agreement"). The Agreement was executed on behalf of Seneca by a specially appointed Independent Counsel, Roscoe C. Howard, Jr., and his law firm at the time, Sheppard Mullin Richter & Hampton, LLP. The appointment of the Independent Counsel and the authorization for him and his firm to retain forensic auditors was specifically set forth in a certified, and apparently unanimous, resolution of the Tribal Council of the Seneca Nation adopted on November 13, 2004. The Agreement between LECG and Seneca is dated November 29, 2004 and was signed by the Independent Counsel on its own behalf, and "on behalf of Seneca Nation of Indians" on December 6, 2004. Thereafter, Seneca paid LECG a retainer and paid LECG's first few invoices via checks drawn on its own bank account and signed by the President and the Treasurer of the Seneca Nation; these payments were made in late 2004 and

- 2 -

early 2005 and totaled approximately $270,000.  LECG continued its work for Seneca and the

Independent Counsel through April 2005.  After a dispute arose as to the remaining outstanding

balance of LECG's charges, LECG commenced an arbitration proceeding in Washington, D.C.

under the auspices of the Judicial Arbitration and Mediation Services, Inc. (JAMS), pursuant to

the specific provisions of the Agreement.  Seneca then refused to recognize the arbitral

jurisdiction of JAMS, claiming that it enjoyed tribal sovereign immunity, and it has sought to

enjoin, in its tribal court, further proceedings in the arbitration.

2.    Accordingly, LECG seeks a declaratory judgment as to Seneca's claim of

sovereign immunity so that both parties can determine whether and how the merits of their

dispute should be litigated and what other parties might be liable.

**Parties, Jurisdiction and Venue**

3.    Plaintiff LECG, LLC, a California limited liability company with its principal

place of business in Emeryville, California, is a forensic accounting, litigation support, and

consulting services firm that maintains an office and regularly conducts business at 1725 Eye

Street, N.W., Washington, D.C. 20006.  LECG is one of the largest and most reputable firms in

its industry, employing more than 1,000 professionals in some 37 domestic and international

offices.

4.    Upon information and belief, Defendant Seneca is a Native American tribe that is

recognized by the United States.  The Seneca Nation territory consists of two separate land

parcels in the vicinity of Buffalo, New York.

5.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§ 1331 because it is a civil action arising under the laws of the United States inasmuch as this

dispute presents a question of tribal sovereignty, as hereinafter detailed.

LEGAL02/30019525v4

6.      There is an actual substantial controversy between LECG and Seneca of sufficient immediacy and reality to warrant the rendering of a declaratory judgment by this Court.

7.      This Court may declare the rights and other legal relations of the parties in this case pursuant to 28 U.S.C. § 2201 and Rule 57, Fed.R.Civ.P., because an actual and justiciable controversy exists concerning the rights of, and legal relations between, LECG and Seneca.

8.      Venue is proper in this Court under the provisions of 28 U.S.C. § 1391 because, among other things: (i) a substantial part of the events giving rise to the claims occurred in this District; (ii) the Agreement specifies that the arbitration to resolve any and all disputes shall take place in this District; (iii) LECG has commenced the JAMS arbitration in this District; and (iv) JAMS has acknowledged its arbitral jurisdiction, made initial rulings, and appointed an Arbitrator in this District.

**Background of the Parties' Dispute**

9.      On November 13, 2004, Seneca retained Roscoe C. Howard, Jr., Esq. and Sheppard Mullin Richter & Hampton, LLP (collectively, "Independent Counsel") as its Independent Counsel to review financial transactions and other issues involving certain of its gaming operations.  The terms of the Independent Counsel's engagement are set forth in the aforementioned resolution of the Seneca Tribal Council, dated November 13, 2004.  A copy of the resolution is attached hereto as Exhibit 1.

10.      Seneca's authorizing resolution expressly authorized the Independent Counsel to retain forensic auditors and such other consultants as it deemed necessary to conduct a thorough review.  Given the nature of the required investigation, it was self evident to both the Independent Counsel and Seneca that the retention of qualified forensic auditors was necessary.

11.     Time was very much of the essence for Seneca because there had been a series of troubling disclosures about its wholly-owned subsidiary, Seneca Gaming Corporation ("SGC"), and the financing and construction of a new casino being built by Seneca in upstate New York.

12.     On November 29, 2004, the Independent Counsel engaged LECG, on its and on Seneca's behalf, to provide forensic accounting and consulting services for the internal investigation. A copy of the Agreement is attached hereto as Exhibit 2. Notably, in the first paragraph of the Agreement, Defendant's Independent Counsel confirmed that it was authorized to retain LECG for its services and, upon signing the Agreement, it specifically agreed and accepted the terms of LECG's engagement "on behalf of Seneca Nation of Indians."

13.     Under the express terms of the Agreement, including LECG's standard terms which were expressly incorporated into and made a part of the Agreement, Seneca (the defined "Client" in the Agreement) agreed, *inter alia*, to compensate LECG for its rendered services, to receive LECG's invoices, to pay a $10,000 retainer, and to submit any dispute to arbitration under the auspices of JAMS in Washington, D.C.

14.     LECG provided forensic accounting and consulting services in connection with the internal investigation through April 2005. During this period, LECG issued invoices to Seneca and its Independent Counsel seeking payment for its services. Both Seneca and the Independent Counsel have repeatedly acknowledged that the LECG team undertook and completed an extraordinary amount of work in this period.

15.     At first Seneca abided by the terms of the Agreement, and between November 2004 and January 2005, it paid the required retainer to LECG as well as LECG's first few invoices. Seneca's payments to LECG totaled $270,539.39. These payments were made via

- 4 -

checks drawn directly on Seneca's own bank account—and signed by its President and its Treasurer. Copies of the Seneca checks are attached hereto as Exhibit 3.

16.     LECG continued its work through April 2005, and Seneca and its representatives interfaced directly with LECG in the course of its work. LECG also issued additional invoices between February and April 2005 that were not, and have not, been paid.

17.     On or around April 1, 2005, the Independent Counsel made a presentation of his and LECG's findings to the Seneca Tribal Council. LECG participated in that presentation. The presentation covered a variety of subjects pertaining to the financing and construction of the new SGC casino; virtually all of these findings and conclusions based on LECG's work have never been questioned. Indeed, most of LECG's work and its conclusions were contained in and adopted by the final report of the Independent Counsel which was delivered to Seneca in September 2005.

18.     However, as a result of a clerical mistake, a single computation of the amount of payments-to-date to SGC's construction manager was in error and that amount was thus wrongly stated during the presentation. This mistake was detected and corrected shortly thereafter.

19.     LECG thereafter continued to seek payment from Seneca for its unpaid invoices. Defendant, however, refused to pay LECG for its previously-rendered services and a principal balance of more than $800,000 (plus interest and fees) remains outstanding. Seneca took the position that the mistake made during the presentation justified its refusal to pay.

20.     Pursuant to the terms of the Agreement, on November 1, 2005, LECG filed a Demand for Arbitration with JAMS in Washington, D.C.  A copy of the Demand for JAMS Arbitration is attached hereto as Exhibit 4.

LEGAL02/30019525v4

**Defendant's Claim of Tribal Sovereign Immunity**

21.    Seneca opposed LECG's Demand for Arbitration on the grounds that it was immune from suit and that it enjoyed sovereign immunity.  In a letter to JAMS dated November 22, 2005, Defendant's Senior Policy Advisor and Counsel, Robert Odawi Porter, stated that although Seneca acknowledged an agreement was entered into with LECG, it had not authorized the Agreement; that Seneca did not intend to waive its tribal sovereign immunity; and that Seneca's Tribal Council had not authorized the Independent Counsel to do so.  A copy of Mr. Porter's letter is attached hereto as Exhibit 5.

22.    Citing its governing rules, however, JAMS's governing body issued a decision dated December 16, 2005, and determined that jurisdictional and arbitrability disputes, including any dispute regarding the arbitration clause of the Agreement, must be submitted to and ruled on by the Arbitrator.  JAMS commenced thus formally the arbitration under its rules on January 5, 2006.  A copy of the JAMS letter is attached hereto as Exhibit 6.

23.    JAMS appointed the Arbitrator, the Honorable James R. Melinson (Ret.), on January 24, 2006.  Mr. Melinson is a former United States District Court Judge who served on the bench of the Eastern District of Pennsylvania in Philadelphia.

24.    On January 25, 2006, Seneca sought and obtained a temporary restraining order from its tribal court—Seneca Nation of Indians Peacemakers Court, Allegany Territory (in Salamanca, New York)—which purported to prohibit LECG and JAMS from proceeding with the arbitration.  JAMS advised LECG that it was prepared to proceed with the arbitration proceeding, as under its rules, it recognized only the jurisdiction of the state and federal courts, but not that of Native American tribal courts.

25.     Seneca did not seek any other relief in its tribal court other than seeking an injunction against further proceedings in the JAMS arbitration.  Copies of Seneca's tribal court complaint and order are attached hereto as Exhibit 7.

26.     LECG did not respond to the tribal court's order, and it did not appear before the Seneca Nation of Indians Peacemakers Court.

27.     The parties, through counsel, subsequently entered into a global standstill agreement, but efforts to achieve a consensual resolution failed.

## CAUSE OF ACTION FOR DECLARATORY JUDGMENT

28.     LECG incorporates by reference Paragraphs 1-27 above as if fully set forth herein.

29.     Defendant has resisted the enforcement of the Agreement on the grounds that it is absolutely immune, and it seeks to permanently prevent LECG from arbitrating its dispute with Seneca.

30.     However, under federal law as enunciated by the United States Supreme Court in *C & L Enters., Inc. v. Citizen Band of Potawatomi Indian Tribe*, 532 U.S. 411, 418, 121 S. Ct. 1589, 1594 (2001), Seneca's entering into the Agreement constitutes an express waiver of its tribal sovereignty.

31.     In light of all the facts and circumstances, Seneca is bound by the Agreement which it authorized, from which it benefited, and which it partially performed.  Thus, there is valid arbitral jurisdiction over the parties' dispute, and the arbitration proceeding commenced by LECG in Washington, D.C. should proceed.

32.     Based on all the foregoing, there is an actual, substantial and justiciable controversy between LECG and Seneca of sufficient immediacy and reality to warrant the rendering of a declaratory judgment by this Court.

WHEREFORE, Plaintiff LECG, LLC respectfully prays for a declaratory judgment as follows:

1.     That the Defendant The Seneca Nation of Indians, has, by virtue of entering into the Agreement between the parties, and in light of all facts and circumstances pertaining to this controversy, waived its tribal sovereign immunity with respect to the matter at issue;

2.     That the Defendant The Seneca Nation of Indians, is subject to the arbitral forum and jurisdiction of JAMS in Washington, D.C. as specified in the Agreement between the parties;

3.     That the arbitration proceeding commenced by LECG before JAMS in Washington, D.C. should proceed, and the Arbitrator appointed therein shall decide the merits of the dispute between the parties; and

4.     That the Plaintiff LECG, LLC be entitled to such other and further relief as this Court deems just and proper, including an award of costs and reasonable attorneys fees both under law and pursuant to the Agreement.

LEGAL02/30019525v4

This 24th day of July, 2006.

                          Respectfully submitted,
                          **LECG, LLC**


                          By its attorneys,



                          ____/s/_____

                          Timothy A. Ngau, Esq. (D.C. Bar no. 339333)
                          ALSTON & BIRD LLP
                          The Atlantic Building
                          950 F Street, N.W.
                          Washington, D.C. 20004
                          Tel.:  (202) 756-3300

                          John F. Cambria, Esq.
                          Kimya S.P. Johnson, Esq.
                          ALSTON & BIRD LLP
                          90 Park Avenue
                          New York, NY 10016
                          Tel.: (212) 210-9400

LEGAL02/30019525v4