**EXHIBIT 5**



**Seneca Nation of Indians**
# DEPARTMENT of JUSTICE
P.O. Box 231, Seneca Nation • Salamanca, New York 14779
(716) 945-1790 • Fax (716) 945-6869 (not for service of papers)

November 22, 2005

VIA ELECTRONIC MAIL

Ms. Jessica Centeno
JAMS
280 Park Avenue
Floor 28 West Building
New York, NY 10017

    Re:    *Response to Arbitration Demand of LECG, LLC*

Dear Ms. Centeno:

    The Seneca Nation of Indians ("Nation") is in receipt of a Demand for Arbitration dated October 27, 2005 that has been filed with JAMS by LECG, LLC ("LECG") relating to a claim against the Nation for a certain sum allegedly owed.

    Please be advised that the Nation is a sovereign nation organized in accordance with its Constitution of 1848, as amended, and recognized as such by the United States pursuant to treaty and federal law.[1] As a result, the Nation possesses inherent attributes associated with this sovereign status, including but not limited to, immunity from unconsented lawsuits or arbitration proceedings that may arise in any forum. The Nation opposes any action by JAMS or LECG to conduct the requested arbitration proceeding on the grounds that the Nation has not expressly waived its sovereign immunity to allow such an arbitration proceeding to take place.

    The relevant law for determining whether the Nation is subject to an arbitration proceeding is Nation law. Nation courts have ruled repeatedly that the Nation and its subdivisions possess

---

[1] *See e.g.* Treaty Between the United States of America and the Six Nations of the Haudenosaunee, Nov. 11, 1794, 7 Stat. 44; *Banner v. United States*, 238 F.3d 1348 (Fed. Cir. 2001) ("The SNI is a sovereign Native American tribe who presently reside on two separate land parcels."); Indian Entities Regarded as Eligible to Receive Services from the United States Bureau of Indian Affairs, 68 Fed. Reg. 234, p. 68180 (Dec. 3, 2003).

LETTER TO JAMS RE: LEGCDEMAND
NOVEMBER 22, 2005
PAGE 2

sovereign immunity.[2] Such immunity remains intact unless expressly waived by the Nation Council.[3]

Federal law supports and recognizes the Nation's sovereign immunity. The U.S. Supreme Court has set forth the standards to be applied when determining whether an Indian nation may be subject to an unconsented lawsuit or arbitration proceeding. The Court has concluded that "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."[4] Such immunity will be recognized "without drawing a distinction based on where the tribal activities occurred" or whether the activities engaged in by the tribe are "governmental or commercial"[5] In sum, the Court has a drawn a "bright line" rule relating to tribal sovereign immunity, requiring that any waiver by Congress be expressed "unequivocally"[6] and any voluntary relinquishment of immunity to be "clear."[7]

On the basis of this legal backdrop, for JAMS to conduct an arbitration proceeding against the Nation, the Nation must have "clearly" waived its sovereign immunity to allow such a proceeding to occur. It has not done so.

LECG cites as the basis for JAMS' authority to conduct an arbitration proceeding involving the Nation a letter agreement between Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") and LECG dated November 29, 2004. Paragraph five of said letter agreement incorporates by reference "LECG's standard commercial terms," which includes a provision authorizing arbitration before JAMS of "[a]ny controversy, dispute, or claim between Client or Counsel." It is alleged that Sheppard Mullin accepted "on its behalf and on behalf of its Client," the Nation, the JAMS arbitration terms. The Nation, however, is not a party to this letter agreement.

---

[2] *See e.g. Snow v. Schindler, et al.*, CA No. 0502-02-1 (Allegany Terr. Peacemakers Ct. Sept. 25, 2002) ("The Seneca Nation of Indians does have legal sovereign immunity, special protection against lawsuit."); *Cooper v. Seneca Gaming Corporation, et al.*, CA No. 0919-02 (Cattaraugus Terr. Peacemakers Ct. Nov. 1, 2002) ("It is well settled that the Seneca Nation of Indians is a sovereign and is immune from suit.").

[3] *See* S.N.I. Peacemakers Court and Surrogates Court Civil Procedure Rules § 2-108 (b) (providing that a waiver of the Nation's sovereignty cannot be implied).

[4] *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998).

[5] *Id.* at 754-755.

[6] *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).

[7] *Oklahoma Tax Commission v. Citizen Band Potawatomi Tribe of Oklahoma*, 498 U.S. 505, 509 (1991).

On November 13, 2004, the Nation retained Sheppard Mullin as its Independent Counsel to review the financial transactions involving its Class III gaming operations.[8] Pursuant to the authorizing legislative resolution, the Nation Council authorized Sheppard Mullin to "retain qualified forensic auditors and such other consultants as [it] may deem necessary to conduct" its activities. Nowhere contained within this resolution is there an express authorization for Sheppard Mullin to waive the Nation's sovereign immunity in any retainer agreement with any of the "qualified forensic auditors" or "consultants" that it was authorized to retain.

Accordingly, to the extent that the November 29, 2004 letter agreement purported to subject the Nation to the dispute resolution provisions contained therein, Sheppard Mullin's acceptance of any contractual arbitration provisions in that letter on behalf of the Nation is *ultra vires* and thus void and of no force and effect. Moreover, because the Nation Council never even had occasion to review and approve the terms of Sheppard Mullin's agreement with LECG, it can hardly be said that such agreement constitutes a "clear" waiver of the Nation's sovereign immunity.[9]

It is thus the Nation's view that, as a matter of both Nation and Federal law, JAMS is without authority to conduct an arbitration proceeding involving the Nation.

Sincerely,

Robert Odawi Porter
Senior Policy Advisor and Counsel

attachment

cc: LECG, Inc.
President
Treasurer
Council

---

[8] *See* Resolution of the Council of the Seneca Nation of Indians, Nov. 13, 2004 (attached).

[9] The U.S. Supreme Court has had occasion to review whether certain contractual arbitration clauses to which an Indian tribe is a signatory may constitute a sufficiently "clear" waiver of tribal sovereign immunity. In *C & L Enterprises v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 415-416 (2001), the Court found such a waiver to have occurred when the tribe offered a form arbitration clause that required that "all claims or disputes" arising under the contract be resolved by binding arbitration, that ensuing arbitral awards be reduced to judgment "in accordance with applicable law in any court having jurisdiction thereof," and that the choice-of-law provision stipulated a federal or state court forum. Nation law, however, has not defined the circumstances under which a contractual arbitration clause may constitute a waiver of the Nation's sovereign immunity.

# Seneca Nation of Indians

**President** - Barry E. Snyder, Sr.
**Clerk** - Geraldine Huff

12837 ROUTE 438
IRVING, NEW YORK 14081

Tel. (716) 532-4900
FAX (716) 532-9132



**Treasurer** - Maurice A. John

P.O. BOX 231
SALAMANCA, NEW YORK
14779

Tel. (716) 945-1790
FAX (716) 945-0150

SENECA NATION OF INDIANS AT THE REGULAR SESSION OF COUNCIL OF THE SENECA NATION OF INDIANS HELD ON NOVEMBER 13, 2004, AT THE G.R. PLUMMER BUILDING ON THE ALLEGANY INDIAN RESERVATION, SALAMANCA, NEW YORK 14779

CN: R-11-13-04-19

| EXECUTIVES PRESENT: | | |
|---|---|---|
| | PRESIDENT | BARRY E. SNYDER, SR. |
| | TREASURER | MAURICE A. JOHN |
| | CLERK | GERALDINE HUFF |

## APPOINTMENT OF AN INDEPENDENT COUNSEL TO INVESTIGATE THE NATION'S CASINO DEVELOPMENT AND MANAGEMENT/APPROVAL

MOTION: by Michael L. John, seconded by Arlene Bova, that Tribal Council approves the following:

**WHEREAS,** Section I of the Constitution of the Seneca Nation of Indians of 1848, as amended, vests the Legislative Authority of the Seneca People in the Nation's Council; and

**WHEREAS,** the Preamble to the Nation Constitution provides that one of the purposes of the Nation government is "to provide for ourselves greater safeguards to pursuit of life, liberty and happiness'"

**WHEREAS,** the Gaming Industry is of vital importance to the economy of the Nation and the general welfare of the Seneca People; and

**WHEREAS,** the Nation has significant concerns regarding the financing, operation and management of its Gaming Facilities operated by the Seneca Gaming Corporation, the Seneca Territory Gaming Corporation, the Seneca Niagara Falls Gaming Corporation, the Seneca Erie Gaming Corporation and the Seneca Gaming and Entertainment Corporation (hereinafter referred to collectively the "Companies"); and

APPOINTMENT OF AN INDEPENDENT COUNSEL TO INVESTIGATE THE NATION'S CASINO
DEVELOPMENT AND MANAGEMENT/APPROVAL
REGULAR SESSION OF COUNCIL
NOVEMBER 13, 2004
Page 2

**WHEREAS,** the Nation desires to ensure that the Gaming Facilities have been constructed, financed, operated and managed by the Companies in accordance with their Charters and the laws of the Nation and, because of the significant influence of non-Seneca individuals and entities in the development of the Gaming Facilities, the laws of the State of New York and the United States of America;

**NOW, THEREFORE, BE IT RESOLVED** that Roscoe C. Howard, Jr. and the law firm of Sheppard Mullin Richter & Hampton, LLP (hereinafter collectively the "Firm") are hereby appointed as Independent Counsel to conduct an independent review of the actions taken by the Companies, the Nation, and any of their organizational components, officers, agents and employees regarding the construction, financing, management and operation of the Nation's Gaming Facilities.

**FURTHER RESOLVED,** that the independent review shall be conducted as follows:

1. The Firm shall retain qualified forensic auditors and such other consultants as the Firm may deem necessary to conduct a thorough review of all financial transactions conducted by or on behalf of the Companies relating to the Gaming Facilities, as well as the construction, management and operation of the Gaming Facilities, to determine whether all financial transactions were *inter alia* conducted at arm's length, in the best interests of the Nation, in accordance with the Companies' fiduciary and other responsibilities to the Nation, free of any conflicts of interest, and in conformity with all applicable and pertinent laws.

2. The Firm shall have the authority to interview any officers, employees and staff of the Companies, the Nation and any affiliated entities to determine their knowledge of the matters under inquiry. Any independent auditors or outside counsel retained by the Companies may be similarly interviewed. Insofar as the laws of the Nation and other applicable laws currently in effect or hereafter adopted may permit, the Firm shall seek to obtain waivers of attorney-client or other privileges and/or utilize any statutory provisions limiting the application of such privileges to the matters under investigation. Wherever practicable, these interviews shall be conducted on a voluntary basis.

3. The Firm shall have the authority and power to subpoena documents and testimony from the Companies, the Nation, and their officers, agents and employees, and any other person or entity to which such subpoena authority could be directed under any applicable law. All interviews and other information-gathering processes will be conducted in accordance with applicable laws of the United States of America and the State of New York regarding criminal and civil law enforcement investigations, except insofar as Nation law provides otherwise.

APPOINTMENT OF AN INDEPENDENT COUNSEL TO INVESTIGATE THE NATION'S CASINO
DEVELOPMENT AND MANAGEMENT/APPROVAL
REGULAR SESSION OF COUNCIL
NOVEMBER 13, 2004
Page 3

4.  Thirty (30) days subsequent to the passage of this Resolution, the Firm shall apprise the Council or its designee of the progress of the investigation to that point and the preliminary findings, if any, that the Firm has made as of that date.

5.  Within ninety (90) days of the passage of this Resolution, the Firm shall provide the Council with a preliminary written report of its findings. If any additional time is deemed necessary to complete the investigation, the report will identify, to the extent practicable and consistent with sound investigative practice, the additional steps remaining to be taken and an estimate of the time necessary to complete them.

6.  If any officers, agents or employees of the Company or the Nation do not provide full and complete cooperation in connection with the Firm's investigation, the Firm shall immediately report such officers, agents or employees of the Company or the Nation to the Council, and the Council shall take any and all actions permitted by applicable law to obtain full and complete cooperation.

**FURTHER RESOLVED,** that the President of the Nation is hereby authorized and directed to sign and enter into an engagement letter agreement with the Firm on the Nation's behalf.

**FURTHER RESOLVED,** that there is hereby appropriated ten thousand dollars ($10,000) as the initial retainer for the Shepard Mullin law firm.

ROLL CALL: 16 YES                                    MOTION CARRIED

### CERTIFICATION

I hereby certify the foregoing extract is a true and correct copy from the minutes of the Regular Session of Council of the Seneca Nation of Indians held on November 13, 2004 on the Allegany Indian Reservation, original of which is on file in the Clerk's Office of the Seneca Nation of Indians.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and caused the seal to be affixed at the G.R. Plummer Building on the Allegany Reservation, Salamanca, New York 14779, on the 17th day of November, 2004.

ATTEST:

{SEAL}

Geraldine Huff, Clerk
SENECA NATION OF INDIANS