IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LECG, LLC

        Plaintiff,

v.

THE SENECA NATION OF INDIANS

        Defendant.

Civil Case No. 1:06-cv-01303 (RCL)

**SENECA NATION OF INDIANS' ANSWER**

Defendant Seneca Nation of Indians (the "Nation"), by and through the undersigned counsel, answers Plaintiff LECG, LLC's ("LECG") Amended Complaint for Declaratory Relief ("Amended Complaint") as follows:

    1.    Defendant admits the averments of the third sentence of paragraph 1 of the Amended Complaint. Defendant denies the remaining averments of paragraph 1 except as follows: Defendant admits that the law firm of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") signed on December 6, 2004 a letter agreement dated November 29, 2004 with LECG and purported to do so "on behalf of the Seneca Nation of Indians" (the "letter agreement"); Defendant admits that it paid LECG approximately $270,000 in late 2004 and early 2005 via checks drawn on its own bank account and containing facsimile signatures of the President and the Treasurer of the Nation; Defendant admits that LECG did work in connection with the letter agreement through April 2005; Defendant admits that LECG commenced an arbitration proceeding regarding the balance of LECG's charges in Washington, D.C. under the auspices of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") and purported to so

under a provision of the letter agreement; Defendant admits that it does not recognize the jurisdiction of JAMS over it because it enjoys sovereign immunity from unconsented legal proceedings; and Defendant admits that in January 2006 it filed an action in the Seneca Nation of Indians Peacemakers Court captioned *Seneca Nation of Indians v. Judicial Arbitration & Mediation Services, Inc. (JAMS) and LECG, LLC*, CA# 0125-06-1 (the "Peacemakers Court Action") seeking to permanently enjoin the arbitration proceeding commenced by LECG.

2. Defendant admits the averments of paragraph 2 of the Amended Complaint only to the extent that LECG seeks a declaratory judgment as to the Nation's claim of sovereign immunity. Defendant denies the remaining averments of paragraph 2.

3. Defendant admits the averments of the first sentence of paragraph 3 of the Amended Complaint. Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of the second sentence of paragraph 3, and therefore denies the same.

4. Defendant admits the averments of the first sentence of paragraph 4 of the Amended Complaint only to the extent that it is a sovereign Nation recognized as such by the United States government. Defendant denies the remaining averments of paragraph 4 except as follows: Defendant admits that it has five separate, non-contiguous sovereign Territories in Western New York.

5. Defendant admits the averments of paragraph 5 of the Amended Complaint.

6. Defendant admits the averments of paragraph 6 of the Amended Complaint only to the extent that there is an actual substantial controversy between LECG and the Nation. Defendant denies the remaining averments of paragraph 6.

7. Defendant admits the averments of paragraph 7 of the Amended Complaint only to the extent of the Court's general authority pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, and only to the extent that there is an actual and justiciable controversy concerning the rights of, and legal relations between, LECG and Seneca. Defendant denies the remaining averments of paragraph 7.

8. Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 8 with respect to venue being proper in this Court under the provisions of 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District. Defendant denies the remaining averments of paragraph 8.

9. Defendant admits the averments of paragraph 9 of the Amended Complaint.

10. Defendant admits the averments of the first sentence of the paragraph 10 of the Amended Complaint. Defendant denies the remaining averments of paragraph 10 with respect to the Nation's state of mind. Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 10 with respect to the Independent Counsel's state of mind, and therefore denies the same.

11. Defendant denies the averments of paragraph 11 of the Amended Complaint.

12. Defendant denies the averments of the first sentence of paragraph 12 of the Amended Complaint. Defendant admits the averments of the second sentence of paragraph 12 to the extent that LECG has attached to its Amended Complaint as Exhibit 2 a copy of the letter agreement. Defendant admits the averments of the third sentence of paragraph 12 only to the extent that the first paragraph of the letter agreement indicates that it "confirm[s]" that Sheppard Mullin "has been authorized" on behalf of the Nation to "engage" LECG for services. Defendant denies the remaining averments of the third sentence of paragraph 12.

13.     Defendant admits the averments of paragraph 13 of the Amended Complaint only as follows:  Defendant admits that the letter agreement incorporates LECG's "standard commercial terms" by reference; Defendant admits that the letter agreement identifies the Seneca Nation of Indians as "Client"; Defendant admits that the letter agreement states that the Client shall compensate LECG for services provided; Defendant admits that the letter agreement provides that LECG "may also send copies of its invoices directly to Client"; and Defendant admits that LECG's "standard commercial terms" (included in Exhibit 2 to the Amended Complaint) provide that any dispute between Client and LECG shall be submitted to arbitration before JAMS in Washington, D.C.  Defendant denies the remaining averments of paragraph 13.

14.     Defendant admits the averments of the first sentence of paragraph 14 of the Amended Complaint only to the extent that LECG provided services in connection with the letter agreement through April 2005.  Defendant denies the remaining averments of the first sentence of paragraph 14.  Defendant admits the averments of the second sentence of paragraph 14 only to the extent that LECG issued invoices to the Independent Counsel, which were forwarded to the Nation, seeking payment for its services.  Defendant denies the remaining averments of the second sentence of paragraph 14.  Defendant denies the averments of the third sentence of paragraph 14 with respect to the Nation.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of the third sentence of paragraph 14 with respect to the Independent Counsel, and therefore denies the same.

15.     Defendant admits the averments of paragraph 15 of the Amended Complaint only as follows:  Defendant made payments to LECG totaling $270,539.39; those payments were made via checks containing facsimile signatures of the Nation's President and Treasurer and

4

drawn on the Nation's bank account; copies of those checks are attached to the Amended Complaint as Exhibit 3. Defendant denies the remaining averments of paragraph 15.

16. Defendant admits the averments of paragraph 16 of the Amended Complaint only as follows: LECG performed work in connection with the letter agreement through April 2005; LECG issued invoices stemming from its work in connection with the letter agreement that have not been paid by Defendant; and LECG employees interacted directly on the Nation's Territories with officers and employees of the Nation and officers and employees of the Seneca Gaming Corporation and its subsidiaries. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of paragraph 16, and therefore denies the same.

17. Defendant admits the averments of the first sentence of paragraph 17 of the Amended Complaint only to the extent that on or about March 31, 2005 Sheppard Mullin made a presentation of its findings to the Nation's Council, President, Treasurer, and legal counsel. Defendant admits the averments of the second sentence of paragraph 17. Defendant admits the averments of the third sentence of paragraph 17 only to the extent that the presentation covered a variety of subjects pertaining to the financing and construction of a new casino. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of the third sentence of paragraph 17, and therefore denies the same. Defendant admits the averments of the fourth sentence of paragraph 17 only to the extent that the Independent Counsel delivered a final report to the Nation in September 2005. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of the fourth sentence of paragraph 17, and therefore denies the same.

18. Defendant admits the averments of the first sentence of paragraph 18 of the Amended Complaint only to the extent that the amount of payments made to the Seneca Gaming Corporation's construction manager, reported by LECG, was in gross error and wrongly stated during the presentation. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of the first sentence of paragraph 18, and therefore denies the same. Defendant admits the averments of the second sentence of paragraph 18 only to the extent that LECG's error was detected after the presentation. Defendant vigorously denies the averments of paragraph 18 to the extent LECG suggests that it detected the error through its own efforts and corrected the error shortly after the presentation, or to the extent LECG suggests that its error was minor, did not result in substantial damage to the Nation and its gaming enterprises, and did not undermine the credibility of LECG's work.

19. Defendant admits the averments of the first sentence of paragraph 19 of the Amended Complaint. Defendant admits the averments of the second sentence of paragraph 19 only to the extent that Defendant has not paid LECG for certain services allegedly rendered by LECG under the letter agreement. Defendant admits the averments of the third sentence of paragraph 19 only to the extent that it took the position that the substantial damages to the Nation and its gaming enterprises caused by LECG's error and the undermining of the credibility of LECG's work caused by the error justified Defendant's decision not to make further payments to LECG.

20. Defendant admits the averments of paragraph 20 of the Amended Complaint only as follows: Defendant admits that LECG filed a demand for arbitration with JAMS in Washington, D.C. and purported to do so pursuant to the terms of the letter agreement;

Defendant admits that LECG has attached a copy of the demand for arbitration to the Amended Complaint as Exhibit 4. Defendant denies the remaining averments of paragraph 20.

21.     Defendant admits the averments of the first and third sentences of paragraph 21 of the Amended Complaint. The November 22, 2005 letter to JAMS from Robert Odawi Porter speaks for itself, and Defendant is not required to admit or deny Plaintiff's characterization of this letter in the second sentence of paragraph 21.

22.     The December 16, 2005 letter from JAMS Associate General Counsel – which Defendant admits is attached to the Amended Complaint as Exhibit 6 – speaks for itself, and Defendant is not required to admit or deny Plaintiff's characterization of this letter in the first sentence of paragraph 22 of the Amended Complaint. Defendant is without knowledge or information sufficient to form a belief as to the truth of the second sentence of paragraph 22, and therefore denies the same.

23.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 23 of the Amended Complaint, and therefore denies the same. Defendant admits the averments of the second sentence of paragraph 23 to the extent that the Honorable James R. Melinson is a former United States District Court Magistrate Judge who served on the bench of the Eastern District of Pennsylvania in Philadelphia.

24.     Defendant admits the averments of the first sentence of paragraph 24 of the Amended Complaint only to the extent that on or about January 23, 2006 Defendant initiated the Peacemakers Court Action; that Defendant sought and obtained in the Peacemakers Court Action a temporary restraining order, which is contained in the January 25, 2006 Order to Show Cause set forth, *inter alia*, in Exhibit 7 to the Amended Complaint; and that the Order to Show Cause

provides that, pending a hearing on the Nation's request for a preliminary injunction, LECG and JAMS are "prohibit[ed] . . . from commencing, prosecuting, administering, carrying on and determining any arbitration proceeding" brought by LECG against the Nation. Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of the second sentence of paragraph 24, and therefore denies the same.

25. Defendant denies the averments of the first sentence of paragraph 25 of the Amended Complaint. Defendant admits the averments of the second sentence of paragraph 25 to the extent that LECG has attached to its Amended Complaint as Exhibit 7, *inter alia*, the Nation's Complaint in the Peacemakers Court Action and the Peacemakers Court's January 25, 2006 Order to Show Cause.

26. Defendant admits the averments of paragraph 26 of the Amended Complaint.

27. Defendant admits the averments of paragraph 27 of the Amended Complaint.

28. Defendant admits the averments of paragraph 28 of the Amended Complaint only to the extent that LECG filed a complaint in this Court on July 24, 2006 seeking a declaratory judgment. Defendant denies the remaining averments of paragraph 28.

29. Defendant admits the averments of paragraph 29 of the Amended Complaint only to the extent that on July 24, 2006 the Nation sought and obtained a second temporary restraining order in the previously-filed and pending Peacemakers Court Action; that the Peacemakers Court scheduled a preliminary injunction hearing for August 21, 2006 at 2:00 p.m.; and that LECG has attached a copy of the Peacemakers Court's July 24, 2006 Second Amended Order to Show Cause, *inter alia*, as Exhibit 8 to the Amended Complaint. Defendant denies the remaining averments of paragraph 29.

30. LECG's letter to the Peacemakers Court dated August 1, 2006 – which Defendant admits is attached, *inter alia*, to the Amended Complaint as Exhibit 9 – speaks for itself, and Defendant is not required to admit or deny Plaintiff's characterization of this letter in the first sentence of paragraph 30 of the Amended Complaint.

31. Paragraph 31 of the Amended Complaint contains no averments to which an answer is required.

32. Defendant admits the averments of paragraph 32 of the Amended Complaint only to the extent that Defendant takes the position that it has not waived its sovereign immunity with respect to the arbitration filed by LECG before JAMS (or any other dispute the Nation may have with LECG, except as otherwise stated in paragraph A below) via the letter agreement or otherwise; that the arbitration filed by LECG before JAMS may not proceed; and that in January 2006 the Defendant invoked the jurisdiction of the Seneca Nation of Indians Peacemakers Court to adjudicate this dispute, which action remains pending.

33. Defendant denies all factual averments and conclusions of law contained in paragraph 33 of the Amended Complaint.

34. Defendant denies all factual averments and conclusions of law contained in paragraph 34 of the Amended Complaint.

35. Defendant admits the averments of paragraph 35 of the Amended Complaint only to the extent that there is an actual, substantial and justiciable controversy between LECG and the Nation. Defendant denies the remaining averments of paragraph 35.

36. Defendant denies that LECG is entitled to the declaratory judgment or other relief requested in paragraphs 1-4 of the Amended Complaint's prayer for relief. Defendant denies all

factual averments and conclusions of law contained in paragraphs 1-4 of the Amended Complaint's prayer for relief.

DEFENDANT'S FURTHER ANSWER AND AFFIRMATIVE DEFENSES

A.  The Seneca Nation of Indians is a sovereign Nation and is immune from unconsented legal proceedings in any forum. Defendant's sovereign immunity bars LECG's claim for declaratory judgment in this action. However, the Council of the Seneca Nation of Indians, by official resolution dated August 12, 2006 (attached to this Answer as Exhibit A), has effected a limited waiver of the Nation's sovereign immunity and consented to suit in this action pursuant to the following terms and conditions:

(1) The Nation's waiver of sovereign immunity is expressly limited, as described in greater detail below, to the adjudication of the claims raised in LECG's July 24, 2006 Complaint for Declaratory Relief and any appeals from the adjudication of those claims. LECG's August 2, 2006 Amended Complaint for Declaratory Relief raises the identical claims as the original Complaint and those claims are accordingly subject to the waiver.

(2) The waiver does not extend to any claim that may be asserted in any further amendment or supplement to LECG's Complaint or Amended Complaint, or to any cross-claim, counterclaim, third party claim, or claim of any other nature that may be filed in this case.

(3) The Nation's waiver is expressly limited to a determination as to the first three paragraphs of LECG's prayer for declaratory judgment (which are identical in its original Complaint and Amended Complaint) – namely, whether the Nation voluntarily waived its sovereign immunity with respect to the arbitration of disputes

      with LECG, whether the Nation is subject to arbitration before JAMS, and whether such arbitration may proceed – and any appeals from the determination of those issues.

(4) The waiver does not extend to LECG's request for unspecified "other and further relief."

(5) The waiver does not extend to LECG's request for an award of attorneys fees and costs under any provision of law, whether pursuant to the letter agreement between LECG and Sheppard Mullin or otherwise.

(6) The Nation expressly reserves its sovereign immunity with respect to any arbitration in which LECG seeks to compel the Nation's participation, and with respect to the enforcement of any award resulting from such arbitration.

(7) The waiver does not preclude the Nation from raising any other defenses to the claims raised by LECG in this action, asking the Court to stay this action pending resolution of the Peacemakers Court action on the same subject matter, or asking the Court to recognize the final determination of the Nation's courts.

(8) In the event that the waiver, or any portion of the waiver, is determined to be invalid or ineffective, the Nation asserts its sovereign immunity as a defense to all claims to the full extent authorized under federal common law until further action is taken by the Council.

  B. The gaming industry is of vital importance to the economy of the Seneca Nation and the general welfare of the Seneca People.

  C. In 2004, the Nation developed significant concerns regarding the financing, operation, and management of the Nation's gaming facilities. Accordingly, the Nation's Council

sought to determine *inter alia* whether the facilities had been constructed, financed, operated, and managed in accordance with the laws of the Nation and whether all financial transactions were conducted at arm's length and in the Nation's best interests.

D. By formal resolution of November 13, 2004 in a regular session of Council on the Nation's Allegany Territory, the Council appointed Roscoe C. Howard, Jr. and Sheppard Mullin as Independent Counsel to conduct this investigation. The resolution provided Independent Counsel specific parameters regarding the permissible scope and manner of its review, including the authority to "retain qualified forensic auditors and such other consultants" as Sheppard Mullin deemed necessary to conduct a thorough investigation. The Council appointed Independent Counsel to better enable the Council to exercise its oversight responsibilities over the Nation's gaming operations.

E. The Nation, through its Council, did not authorize (via the November 13, 2004 resolution or otherwise) Sheppard Mullin or any of its representatives to waive the Nation's sovereign immunity under any circumstances or to submit the Nation to binding arbitration with third parties under any circumstances. Whether a party possesses authority to waive the Nation's sovereign immunity is a question of Nation law.

F. The Nation had no prior relationship with Sheppard Mullin or LECG.

G. The Nation was not a signatory to the letter agreement, and the Nation did not review, approve, or authorize the letter agreement.

H. In the course of its work, LECG, its employees, agents, and representatives repeatedly entered the Nation's Territories to, *inter alia*, image hard drives, preserve data, extract emails, and retrieve files and financial data from the computer systems of the Seneca Gaming Corporation and its wholly-owned gaming enterprises; gather and review documents held by the

Nation, the Seneca Gaming Corporation and its wholly-owned gaming enterprises; interview the officers, employees, and staff of the Nation, the Seneca Gaming Corporation and its wholly-owned gaming enterprises; and present its preliminary data and findings to the Nation's Council, President, Treasurer, and legal counsel.

I.       On or about March 31, 2005, LECG presented its findings, including the grossly erroneous and mistaken accounting information referenced in paragraph 18 of the Amended Complaint, to the Nation's Council, President, Treasurer, and legal counsel in Council Chambers on the Nation's Territories.

J.       On or about April 7, 2005, the grossly erroneous and mistaken accounting information referenced in paragraph 18 of the Amended Complaint was presented to the Seneca Gaming Corporation's Board of Directors and Audit Committee on the Nation's Territories.

K.       Due to LECG's gross error, the Council, Board of Directors, and Audit Committee were led to believe that the Nation's Seneca Niagara Falls Gaming Corporation had made an unauthorized $6.3 million interest-free loan to the principal construction contractor for the Nation's Seneca Niagara Casino on the Niagara Falls Territory. In fact, the construction contractor had been underpaid by $1.5 million in the relevant period.

L.       The error was identified by the Vice President of Finance of the Seneca Niagara Casino and forwarded to LECG.

M.       LECG argued in papers submitted to JAMS that the Nation's Council, through its November 13, 2004 resolution, authorized Sheppard Mullin to waive the Nation's sovereign immunity by authorizing Sheppard Mullin to "retain qualified forensic auditors and such other consultants as the Firm may deem necessary to conduct a thorough review . . . ." The

13

interpretation of Council resolutions and of their force and effect are quintessential questions of Nation law.

N. In its January 23, 2006 Complaint in the Peacemakers Court Action – attached, *inter alia*, to LECG's Amended Complaint at Exhibit 7 – the Nation alleged at paragraphs 4-10, *inter alia*, that the Nation was not a party to the letter agreement between LECG and Sheppard Mullin, did not authorize Sheppard Mullin or its representatives to waive the Nation's sovereign immunity or subject it to binding arbitration, and was immune from any arbitration proceeding brought by LECG against the Nation.

O. Based on these allegations in the Peacemakers Court Action, the Nation requested that the Peacemakers Court temporarily and permanently enjoin LECG and JAMS from "commencing, prosecuting, administering, carrying on, holding and/or determining any arbitration proceeding" brought by LECG against the Nation.

P. The Peacemakers Court awarded such relief on a temporary basis in its Order to Show Cause dated January 25, 2006, pending a hearing on the Nation's request for a preliminary injunction.

Q. After the Nation and LECG agreed on February 9, 2006 to hold all legal and arbitration proceedings in abeyance, the Peacemakers Court struck this temporary relief in its Amended Order to Show Cause dated February 14, 2006.

R. On July 24, 2006 – after LECG had notified the Nation on July 18, 2006 that it would reinitiate its JAMS arbitration and/or commence other legal proceedings against the Nation – the Nation sought, and the Peacemakers Court entered, a Second Amended Order to Show Cause in the Peacemakers Court Action temporarily restraining LECG and JAMS from "commencing, prosecuting, administering, carrying on, holding and/or determining any

arbitration proceeding" brought by LECG against the Nation and directing the parties to appear on August 21, 2006 for a preliminary injunction hearing regarding the same.

S.	On August 1, 2006, counsel for LECG sent a letter to two Peacemakers assigned to the Peacemakers Court Action, *inter alia*, contesting the jurisdiction of the Peacemakers Court.

T.	LECG failed to appear before the Peacemakers Court for the preliminary injunction hearing on August 21, 2006.  Thereafter, in an order dated August 30, 2006, the Peacemakers Court noted LECG's challenge to its jurisdiction and ordered the parties to brief "all issues relating to the jurisdiction of [the] Court to hear and determine this action[.]"  The Court directed the parties to simultaneously exchange opening briefs on September 29, 2006, and to exchange reply briefs on or before October 21, 2006.  Citing LECG's counsel's representation that LECG would not presently seek to advance the JAMS arbitration against the Nation, the Peacemakers Court declined to extend the temporary restraining order or to consider interim injunctive relief pending the resolution of the jurisdictional issue.

U.	The Peacemakers Court has jurisdiction over the Nation's claim against LECG in the Peacemakers Court Action as a matter of both tribal and federal law.

V.	In this Court, the subject matter of LECG's July 24, 2006 Complaint and August 2, 2006 Amended Complaint is identical to and duplicative of the pending Peacemakers Court Action, filed six months prior in January 2006.

W.	Pursuant to the exhaustion doctrine set forth in *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9 (1987), and *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845 (1985), the Nation intends to submit a motion asserting that the instant action should be stayed until LECG exhausts all available remedies in the courts of the Seneca Nation to challenge the

15

jurisdiction of the Peacemakers Court.  Until LECG exhausts its tribal court remedies, further proceedings in this action would unlawfully interfere with the sovereignty and right to self-government of the Seneca Nation.

X. Under the exhaustion doctrine, if the courts of the Seneca Nation do not uphold the jurisdiction of the Peacemakers Court, this Court could proceed to adjudicate the merits of LECG's claim that the Nation has waived its sovereign immunity with respect to the arbitration demanded by LECG.

Y. Alternatively, under the exhaustion doctrine, if the courts of the Seneca Nation uphold the jurisdiction of the Peacemakers Court, this Court could not proceed until the courts of the Seneca Nation have adjudicated the merits of the Nation's Complaint.  In that event, and in the event LECG in fact exhausts all remedies available in courts of the Seneca Nation, this Court could then review the Peacemakers Court's jurisdictional determination.  If this Court were to affirm the finding of jurisdiction as a matter of federal law, the exhaustion doctrine would require it to defer to the Peacemakers Court's determination regarding the merits of the alleged sovereign immunity waiver.  If, on the other hand, this Court were to find that the courts of the Seneca Nation are without jurisdiction as a matter of federal law, it could then proceed to adjudicate the merits of LECG's claim that the Nation has waived its sovereign immunity with respect to the arbitration demanded by LECG.

WHEREFORE, Defendant prays that Plaintiff be granted no declaratory or other relief, and that Defendant be allowed its costs and reasonable attorneys' fees in defending this action.

Dated this 12th day of September, 2006.

                                        Respectfully submitted,

| | |
|---|---|
| | /s/ Riyaz A. Kanji |
| Robert Odawi Porter | Riyaz A. Kanji |
| Senior Policy Advisor and Counsel | KANJI & KATZEN, PLLC |
| Christopher Karns | 101 North Main Street |
| Deputy Counsel | Suite 555 |
| Seneca Nation of Indians | Ann Arbor, Michigan 48104 |
| Post Office Box 231, Seneca Nation | Ph:  (734) 769-5400 |
| Salamanca, NY 14779 | Fax:  (734) 769-2701 |
| Ph:  (716) 945-1790 | |
| Fax:  (716) 945-6869 | Phillip E. Katzen |
| | Cory Albright |
| | KANJI & KATZEN, PLLC |
| | 100 South King Street, Suite 560 |
| | Seattle, Washington 98104 |
| | Ph:  (206) 344-8100 |

*Counsel for Seneca Nation of Indians*