# ATTACHMENT 14



# Seneca Nation of Indians
# DEPARTMENT of JUSTICE

P.O. Box 231, Seneca Nation • Salamanca, New York 14779
(716) 945-1790 • Fax (716) 945-6869 (not for service of papers)

September 2, 2005

VIA ELECTRONIC MAIL

Catherine J. McEnearney,
    Assistant General Counsel
LECG
1725 Eye Street, NW
Suite 800
Washington, D.C. 20006

    Re:    *Outstanding Invoices*

Dear Ms. McEnearney,

    I have had the opportunity to review your request for payment by the Nation of outstanding invoices sent to the Nation through Mark Nagle, Esq. of Sheppard Mullin, the Nation's Independent Counsel, relating to work supporting that firm. Thank you for your patience.

    To best address our concerns, I direct your attention to a letter sent on April 26, 2005 from John I. Salomon of your firm to Roscoe C. Howard, Jr. of Sheppard Mullin. As you are aware, this letter revealed that LECG had made an error in reporting payments made to Klewin Construction "when a bank wire transfer from SNFGC to Klewin dated April 25, 2003, in the amount of $700,000 was inadvertently entered into a spreadsheet as $7,000,000 (an extra zero)." According to LECG, the result was that

> This error caused the cumulative amount of overpayments to Klewin as of June 30, 2003 to change from an apparent overpayment in the amount of $4.8 million (original schedule) to an actual underpayment of $1.5 million (revised schedule). As a result, based on the information obtained and analysis performed to date, it does not appear that Klewin received payments in advance of billings. (*see* attached)

This information was conveyed by Mr. Howard to Martin Seneca, Jr., Chairman of the Seneca Gaming Corporation Audit Committee on April 27, 2005.

LETTER TO CATHERINE J. MCENEARNEY, ESQ.
SEPTEMBER 2, 2005
PAGE 2

It is difficult to precisely calculate the damage caused by this error, but it is beyond significant given the nature of LECG's involvement with the Independent Counsel and the Nation. By appointing the Independent Counsel, the Nation was not only seeking information regarding the development of its gaming facilities, it was seeking *confidence* that the information obtained would be accurate and reliable. Against the backdrop of the issues that led to the appointment of the Independent Counsel, there is a significant difference between a situation where it might be the case that the SGC's primary contractor may have been overpaid $4.8 million without explanation to one in which it was actually *owed* $1.5 million.

LECG markets itself as an "expert" firm capable of providing "high quality ... analysis" "to provide clarity on unresolved problems, identify unusual or suspicious transactions, investigate fraud and quantify values in dispute." (*see* attached pages from the LECG brochure)

The Nation views LECG's conduct much to the contrary. In the interests of fairness, we ask that you provide the following:

1. An explanation why LECG's conduct should not be viewed as gross negligence and malpractice; and

2. An explanation why the Nation should not only not have to pay any additional sums billed by LECG, but why the Nation should not have returned to it the sums already paid to LECG, as well as any other damages that might be due to the Nation or others as the result of LECG's gross negligence and malpractice.

We look forward to your response.

Very truly yours,

Robert Odawi Porter
Senior Policy Advisor and Counsel

cc:  President Snyder
     Treasurer M. John
     Mark Nagle, Esq.