ATTACHMENT 16



# Seneca Nation of Indians
# DEPARTMENT of JUSTICE

P.O. Box 231, Seneca Nation • Salamanca, New York 14779
(716) 945-1790 • Fax (716) 945-6869 (not for service of papers)

November 22, 2005

VIA ELECTRONIC MAIL

Ms. Jessica Centeno
JAMS
280 Park Avenue
Floor 28 West Building
New York, NY 10017

    Re:    *Response to Arbitration Demand of LECG, LLC*

Dear Ms. Centeno:

    The Seneca Nation of Indians ("Nation") is in receipt of a Demand for Arbitration dated October 27, 2005 that has been filed with JAMS by LECG, LLC ("LECG") relating to a claim against the Nation for a certain sum allegedly owed.

    Please be advised that the Nation is a sovereign nation organized in accordance with its Constitution of 1848, as amended, and recognized as such by the United States pursuant to treaty and federal law.[1] As a result, the Nation possesses inherent attributes associated with this sovereign status, including but not limited to, immunity from unconsented lawsuits or arbitration proceedings that may arise in any forum. The Nation opposes any action by JAMS or LECG to conduct the requested arbitration proceeding on the grounds that the Nation has not expressly waived its sovereign immunity to allow such an arbitration proceeding to take place.

    The relevant law for determining whether the Nation is subject to an arbitration proceeding is Nation law. Nation courts have ruled repeatedly that the Nation and its subdivisions possess

---

[1] *See e.g.* Treaty Between the United States of America and the Six Nations of the Haudenosaunee, Nov. 11, 1794, 7 Stat. 44; *Banner v. United States*, 238 F.3d 1348 (Fed. Cir. 2001) ("The SNI is a sovereign Native American tribe who presently reside on two separate land parcels."); Indian Entities Regarded as Eligible to Receive Services from the United States Bureau of Indian Affairs, 68 Fed. Reg. 234, p. 68180 (Dec. 3, 2003).

LETTER TO JAMS RE: LEGCDEMAND
NOVEMBER 22, 2005
PAGE 2

sovereign immunity.[2] Such immunity remains intact unless expressly waived by the Nation Council.[3]

Federal law supports and recognizes the Nation's sovereign immunity. The U.S. Supreme Court has set forth the standards to be applied when determining whether an Indian nation may be subject to an unconsented lawsuit or arbitration proceeding. The Court has concluded that "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."[4] Such immunity will be recognized "without drawing a distinction based on where the tribal activities occurred" or whether the activities engaged in by the tribe are "governmental or commercial"[5] In sum, the Court has a drawn a "bright line" rule relating to tribal sovereign immunity, requiring that any waiver by Congress be expressed "unequivocally"[6] and any voluntary relinquishment of immunity to be "clear."[7]

On the basis of this legal backdrop, for JAMS to conduct an arbitration proceeding against the Nation, the Nation must have "clearly" waived its sovereign immunity to allow such a proceeding to occur. It has not done so.

LECG cites as the basis for JAMS' authority to conduct an arbitration proceeding involving the Nation a letter agreement between Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") and LECG dated November 29, 2004. Paragraph five of said letter agreement incorporates by reference "LECG's standard commercial terms," which includes a provision authorizing arbitration before JAMS of "[a]ny controversy, dispute, or claim between Client or Counsel." It is alleged that Sheppard Mullin accepted "on its behalf and on behalf of its Client," the Nation, the JAMS arbitration terms. The Nation, however, is not a party to this letter agreement.

---

[2] *See e.g. Snow v. Schindler, et al.*, CA No. 0502-02-1 (Allegany Terr. Peacemakers Ct. Sept. 25, 2002) ("The Seneca Nation of Indians does have legal sovereign immunity, special protection against lawsuit."); *Cooper v. Seneca Gaming Corporation, et al.*, CA No. 0919-02 (Cattaraugus Terr. Peacemakers Ct. Nov. 1, 2002) ("It is well settled that the Seneca Nation of Indians is a sovereign and is immune from suit.").

[3] *See* S.N.I. Peacemakers Court and Surrogates Court Civil Procedure Rules § 2-108 (b) (providing that a waiver of the Nation's sovereignty cannot be implied).

[4] *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998).

[5] *Id.* at 754-755.

[6] *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).

[7] *Oklahoma Tax Commission v. Citizen Band Potawatomi Tribe of Oklahoma*, 498 U.S. 505, 509 (1991).

LETTER TO JAMS RE: LEGCDEMAND
NOVEMBER 22, 2005
PAGE 3

On November 13, 2004, the Nation retained Sheppard Mullin as its Independent Counsel to review the financial transactions involving its Class III gaming operations.[8] Pursuant to the authorizing legislative resolution, the Nation Council authorized Sheppard Mullin to "retain qualified forensic auditors and such other consultants as [it] may deem necessary to conduct" its activities. Nowhere contained within this resolution is there an express authorization for Sheppard Mullin to waive the Nation's sovereign immunity in any retainer agreement with any of the "qualified forensic auditors" or "consultants" that it was authorized to retain.

Accordingly, to the extent that the November 29, 2004 letter agreement purported to subject the Nation to the dispute resolution provisions contained therein, Sheppard Mullin's acceptance of any contractual arbitration provisions in that letter on behalf of the Nation is *ultra vires* and thus void and of no force and effect. Moreover, because the Nation Council never even had occasion to review and approve the terms of Sheppard Mullin's agreement with LECG, it can hardly be said that such agreement constitutes a "clear" waiver of the Nation's sovereign immunity.[9]

It is thus the Nation's view that, as a matter of both Nation and Federal law, JAMS is without authority to conduct an arbitration proceeding involving the Nation.

Sincerely,

Robert Odawi Porter
Senior Policy Advisor and Counsel

attachment

cc:   LECG, Inc.
      President
      Treasurer
      Council

---

[8]   *See* Resolution of the Council of the Seneca Nation of Indians, Nov. 13, 2004 (attached).

[9]   The U.S. Supreme Court has had occasion to review whether certain contractual arbitration clauses to which an Indian tribe is a signatory may constitute a sufficiently "clear" waiver of tribal sovereign immunity. In *C & L Enterprises v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 415-416 (2001), the Court found such a waiver to have occurred when the tribe offered a form arbitration clause that required that "all claims or disputes" arising under the contract be resolved by binding arbitration, that ensuing arbitral awards be reduced to judgment "in accordance with applicable law in any court having jurisdiction thereof," and that the choice-of-law provision stipulated a federal or state court forum. Nation law, however, has not defined the circumstances under which a contractual arbitration clause may constitute a waiver of the Nation's sovereign immunity.