# ATTACHMENT 18

# ALSTON&BIRD LLP

90 Park Avenue
New York, New York 10016

212-210-9400
Fax: 212-210-9444
www.alston.com

John F. Cambria

Direct Dial: 212-210-9583

E-mail: jcambria@alston.com
049175/301218 L5469

December 1, 2005

*VIA ELECTRONIC MAIL AND MESSENGER*

Jessica Centeno
JAMS
280 Park Avenue
Floor 28 West Building
New York, NY 10017

Re: LECG, LLC v. The Seneca Nation of Indians

Dear Ms. Centeno:

We represent LECG, LLC ("LECG") in the above-referenced JAMS proceeding against The Seneca Nation of Indians (the "Respondent").[1] As you know from the file, LECG has initiated this proceeding in full compliance with JAMS' rules and procedures. We are in receipt of Respondent's letter to JAMS dated November 22, 2005 ("Letter"), and submit this letter and enclosures in response.

LECG objects to Respondent's Letter as misdirected and contrary to JAMS governing Comprehensive Arbitration Rules and Procedures ("Rules"). Rule 11(c) concerns "jurisdictional challenges" and directs that "jurisdictional and arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator." The full text of Rule 11(c) states:

> Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

---

[1] On November 1, 2005, LECG filed a Demand for Arbitration dated October 27, 2005 ("Demand"), with JAMS. The Demand outlines LECG's claim against Respondent and seeks payment for fees and services LECG rendered to Respondent between November 2004 and April 2005, among other things. Another copy of the Demand is attached hereto for your convenience.

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000
Fax: 404-881-7777

Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000
704-444-1000
Fax: 704-444-1111

3201 Beechleaf Court, Suite 600
Raleigh, NC 27604-1062
919-862-2200
Fax: 919-862-2260

601 Pennsylvania Avenue, N.W.
North Building, 10th Floor
Washington, DC 20004-2601
202-756-3300
Fax: 202-756-3333

Brienner Strasse 11/V
80333 Munich
(49) (89) 238-0-70
Fax: (49) (89) 238-0-7110
(Representative Office)

Jessica Centeno
December 1, 2005
Page 2

By claiming that it "is not a party to the governing arbitration agreement," that it is not a proper party to arbitration and that LECG's dispute is not arbitrable, Respondent raises jurisdictional and arbitrability arguments which fall squarely within Rule 11(c).[2] Respondent has ignored Rule 11(c) by submitting the Letter to JAMS administrators instead of the Arbitrator, and we are not aware of any rule permitting a party to do so. Further, since the Arbitrator has not yet been selected for this matter, Respondent's attempt to raise such jurisdictional and arbitrability issues at this time is premature.

The issue of whether Respondent was a party to the governing arbitration agreement and/or whether it is bound by such an agreement raises a factual dispute and will require the presentation of supporting evidence. This is but one of several issues to be presented to and decided by the Arbitrator. Accordingly, Arbitrator selection and hearing scheduling should proceed in accordance with the Rules. We believe that, pursuant to JAMS' rules and procedures, a Commencement Letter should have been issued, and frankly, we fail to understand how the Letter raises any issue that should be considered by JAMS' National Arbitration Council ("NAC").

Respondent's selective recitation of Nation law and federal law highlights its back-door attempt to raise substantive arguments, such as whether it waived its sovereign immunity, that concern the underlying merits of the case and are to be decided by the Arbitrator. Indeed, now that Respondent has itself chosen to respond in some fashion to JAMS, we do not believe that Respondent (or anyone else) is entitled to flout the rules or create procedures of its own choosing. These arguments, defenses, and affirmative defenses can and should be considered only by the Arbitrator.

As you can appreciate from the foregoing, we do not believe it is appropriate to address legal or factual merits in correspondence to JAMS personnel. Nonetheless, we note briefly that Respondent's position of sovereign immunity is directly contrary to a 2001 decision of the United States Supreme Court, which Respondent tries to bury in the last footnote of its Letter. *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe* ("*Potawatomi*"), 532 U.S. 411, 414 (2001). In *Potawatomi*, the Supreme Court squarely held that the Tribe waived its sovereign immunity by consenting to an arbitration clause. *Id.* at 418-420. Applying the *Potowatomi* case, among others, LECG believes Respondent has plainly waived its sovereign immunity

Furthermore, even without the benefit of any discovery, it is clear that Respondent's position on lack of authorization is frivolous.

    1) Respondent, by its own admission, retained Roscoe C. Howard, Jr. and Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") as its

---

[2] The referenced governing arbitration agreement is the Engagement Agreement between LECG and Respondent, dated November 29, 2004 ("Engagement Agreement"), which was described in the Demand and attached thereto. Another copy of the Engagement Agreement is attached hereto for your convenience.

Jessica Centeno
December 1, 2005
Page 3

      Independent Counsel and explicitly authorized them to retain "qualified forensic auditors and such other consultants as . . . necessary . . ."[3];

2) With Respondent's authorization, Sheppard Mullin retained LECG, by executing the Engagement Agreement which explicitly states that Sheppard Mullin "has been authorized on behalf of Seneca Nation of Indians ("Client")" and that "Client shall compensate LECG for services provided"; and

3) Respondent consented to, was directly aware of, and operated under the various terms of the Engagement Agreement, by, *inter alia*, providing LECG with the requisite $10,000 retainer, and, pursuant to "LECG's Standard Commercial Terms" as incorporated into the Engagement Agreement, submitting payment directly to LECG on multiple occasions for services rendered in connection thereto.

Copies of Respondent's checks made out and directly payable to LECG are attached hereto.

    Despite the directives of Rule 11(c) and the foregoing objections, if NAC requires LECG to address the merits of Respondent's affirmative defenses at this time, LECG will provide additional evidentiary material on these issues.

    Thank you.

Very truly yours,

John F. Cambria

JFC:kspj
Enclosures

cc: Robert Odawi Porter, Esq.

NYC01/7792393v3

---

[3] *See* Resolution of the Council of the Seneca Nation of Indians, dated November 13, 2004 ("Resolution"), which was attached to Respondent's Letter.