# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

LECG, LLC

       Plaintiff,

                                Civil Case No. 1:06-cv001303 (RCL)

   v.

THE SENECA NATION OF INDIANS

       Defendant.

_____

### DEFENDANT SENECA NATION OF INDIANS' REPLY
### IN SUPPORT OF MOTION TO STAY

1. <u>The Facts and Law that Render the Exhaustion of Tribal Court Remedies Mandatory in this Case Remain Undisputed</u>

      In its *Memorandum of Law in Opposition to Defendant's Motion to Stay and in Support of Plaintiff LECG, LLC's Motion for Judgment on the Pleadings* ("*Opposition*") (Doc. No. 17), Plaintiff LECG, LLC ("LECG") does not dispute any of the procedural or substantive facts outlined by the Seneca Nation of Indians (the "Nation") in its *Statement of Points and Authorities in Support of Defendant's Motion to Stay* ("*Statement*"). Under well-established principles of federal Indian law, these facts unquestionably mandate that, before further proceedings can occur in this Court, LECG exhaust its remedies in the parallel action previously-filed by the Nation in the Seneca Nation of Indians Peacemakers Court ("Peacemakers Court").[1]

---

[1] LECG largely devotes its *Opposition* to arguing the merits of its claim for declaratory relief (and the merits of the Nation's claim for injunctive relief in the Peacemakers Court). However,

The exhaustion doctrine precludes a party from attacking or evading the jurisdiction of a nation or tribal court in a collateral or parallel federal action unless and until it first exhausts all remedies available in the nation or tribal court.  *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15-17 (1987); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856-57 (1985).  At its core, the doctrine recognizes that "[t]ribal courts play a vital role in tribal self-government, . . . [that] the Federal Government has consistently encouraged their development[,]" and that "[a] federal court's exercise of jurisdiction over matters relating to reservation affairs can . . . impair the authority of tribal courts[.]"  *Iowa Mut.*, 480 U.S. at 14-15 (citations and footnote omitted).  Accordingly, a federal court must "stay[] its hand" and may not "consider any relief" until exhaustion is complete.  *Nat'l Farmers,* 471 U.S. at 857.  While exhaustion is "required as a matter of comity, not as a jurisdictional prerequisite[,]" *Iowa Mut.*, 480 U.S. at 16 n.8, the doctrine is a mandatory "inflexible bar" to a federal court's exercise of jurisdiction.  *Bowen v. Doyle*, 230 F.3d 525, 529-30 (2d Cir. 2000) (quoting *Granberry v. Greer*, 481 U.S. 129, 131 (1987)); *see also, e.g.*, *Burlington Northern R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1245 & n.3 (9th Cir. 1991) (exhaustion is "not discretionary; it is mandatory" and is "a prerequisite to a federal court's exercise of its jurisdiction").[2]

---

as explained in the Nation's *Motion to Continue Date for Filing Opposition to Plaintiff's Motion for Judgment on the Pleadings* (Doc. No. 19), LECG's attempt to embroil the Nation and this Court in the merits of the parties' dispute prior to resolution of the threshold exhaustion issue, which resolution will determine the appropriate forum, plainly contravenes the exhaustion doctrine.  Accordingly, the Nation will not directly respond to LECG's arguments on the merits, except insofar as necessary to address the proper application of the exhaustion doctrine to this case.

[2] In *Iowa Mut.*, the Supreme Court firmly rejected the argument that a federal court's undisputed subject matter jurisdiction, whether based upon diversity of citizenship or the presence of a federal question, "overrides the federal policy of deference to tribal courts" and excuses the exhaustion of tribal court remedies.  480 U.S. at 17-18; *see also, e.g.*, *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1229-30 (9th Cir. 1989) (exhaustion required despite federal court's subject matter jurisdiction).

LECG does not dispute these fundamental principles, except to quibble with whether exhaustion is mandatory or whether the doctrine should be "interpreted narrowly." *Opposition* at 13 (quoting *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 80 (2d Cir. 2001)). Here, in light of the doctrine's clear application to the undisputed facts of this case, any such doctrinal distinction is irrelevant.[3]

First, LECG cannot disguise its blatant effort to circumvent the jurisdiction of the Peacemakers Court via this later-filed and duplicative action, which effort demands application of the exhaustion doctrine. In January 2006, when LECG avowed to proceed in the Nation's absence with an arbitration targeting the Nation's assets, see *Arbitration Response*, *Kanji Stay Dec.* at Att. 16 and *Johnson Letter*, *Kanji Stay Dec.* at Att. 20, the Nation filed an action for permanent injunctive relief in the Peacemakers Court seeking to enjoin LECG from proceeding with the arbitration on the basis that the Nation had not waived its sovereign immunity from

---

[3] *Garcia* is easily distinguished by the fact that the Second Circuit limited its decision in that case to circumstances where there was no "competing proceeding in tribal court." 268 F.3d at 82-84. Moreover, the *Garcia* court's strict analogy between the tribal court exhaustion doctrine and the federal-state abstention doctrine set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) is inconsistent with Supreme Court precedent and has been soundly rejected. *See Iowa Mut.*, 480 U.S. at 22 (Stevens, J., dissenting in part) ("Until today, we have never suggested that an Indian tribe's judicial system is entitled to a greater degree of deference than the judicial system of a sovereign State. Today's opinion, however, requires the federal court to avoid adjudicating the merits of a controversy also pending in tribal court although it could reach those merits if the case instead were pending in state court."); *Bank One, N.A. v. Shumake*, 281 F.3d 507, 514-15 (5th Cir. 2002) ("The tribal exhaustion doctrine is in no way based on *Colorado River. Iowa Mutual*'s reference to the *Colorado River* doctrine as another comity-based abstention doctrine does not suggest that the *Colorado River* principles apply to a tribal exhaustion case. . . . [T]he *Colorado River* doctrine proceeds from the premise that the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them and that therefore, the pendency of litigation in state court is not a bar to proceedings in federal court involving the same subject matter in the absence of exceptional circumstances. The policy which animates the tribal exhaustion doctrine, however, subordinates the federal court's obligation to exercise its jurisdiction to the greater policy of promoting tribal self-government. *Colorado River* abstention is thus the exception to the rule, whereas tribal exhaustion is the rule rather than the exception.") (footnote and all internal quotation marks omitted).

3

unconsented legal proceedings, the Nation had not authorized the law firm of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") to waive the Nation's immunity, and the Nation had not been a party to (nor reviewed or approved) the letter agreement entered between Sheppard Mullin and LECG purporting to subject the Nation to binding arbitration (the "letter agreement"). *See Nation's Complaint*, *Kanji Stay Dec.* at Att. 21.[4] Six months later, LECG filed its action for declaratory relief in this Court, likewise seeking a determination as to the validity of the arbitration clause and purported waiver of sovereign immunity. Regarding both the scope of the parties' respective factual allegations and the practical effect of any ruling on the merits, the two actions are indistinguishable, see *Statement* at 21-23, and thus, exhaustion is plainly warranted.

Second, LECG does not dispute that the respective legal actions arise from activities within the Nation's Territories, specifically, the efforts of the Council of the Seneca Nation of Indians (the "Council") to investigate the development and management activities of the Nation's wholly-owned gaming enterprises – see *Resolution*, *Kanji Stay Dec.* at Att. 1, pp. 1-2; LECG's extensive work within the Nation's Territories over a period of five months in connection with that investigation – see *Invoice #44832*, *Kanji Stay Dec.* at Att. 5, pp.4-5; *Invoice #43727*, *Kanji Stay Dec.* at Att. 6, pp.4-5; *Invoice #42748*, *Kanji Stay Dec.* at Att. 7, pp.4-5; *Invoice #42199*, *Kanji Stay Dec.* at Att. 8, pp.4-11; *Invoice #41542*, *Kanji Stay Dec.* at Att. 9, pp.3-4; and LECG's attempt to pierce the Nation's sovereign immunity with respect to a dispute over the quality of that work – see *Howard Letter*, *Kanji Stay Dec.* at Att. 12; *Salomon Letter*, *Kanji Stay Dec.* at Att. 13; *Porter Letter*, *Kanji Stay Dec.* at Att. 14; *Arbitration Demand*, *Kanji Stay Dec.* at Att. 15; *Arbitration Response*, *Kanji Stay Dec.* at Att. 16. Moreover, it is

---

[4] The Nation uses the same citation format in this reply as in the Nation's *Statement*.

readily apparent that the parties' arguments as to the validity of the arbitration clause and purported waiver of sovereign immunity hinge upon questions of Nation law, including the formal resolutions of the Nation's Council. *See, e.g.*, *id.*; *Opposition* at 2-5, ¶¶ 2, 9.

Third, LECG does not dispute that it has openly and repeatedly flouted the processes of the Peacemakers Court, justifying its actions through letters challenging the jurisdiction of the Court over it and over the subject matter of the Nation's action. LECG's disrespect for the Peacemakers Court has attained its zenith in recent weeks. After receiving two letters from LECG summarily contesting its jurisdiction, see *Peacemakers Court Letter*, *Kanji Stay Dec.* at Att. 27 and *Second Peacemakers Court Letter*, *Kanji Stay Dec.* at Att. 28, the Peacemakers Court ordered the parties on August 30, 2006 to submit briefs on all jurisdictional issues by September 29, 2006. *Order on Briefing*, *Kanji Stay Dec.* at Att. 29. LECG, however, flatly refused to utilize the process being afforded it by the Peacemakers Court to lay out in a thorough and respectful manner the basis for its challenge to that Court's jurisdiction. Instead, it submitted yet another letter to the court in which it baldly claimed that the Peacemakers action was moot as a result of the duplicative action subsequently filed by LECG in this Court. *See Third Peacemakers Court Letter*, *Kanji Stay Dec.* at Att. 30.[5] In doing so, LECG ignored not only the Peacemakers Court's briefing order but also a fundamental tenet of the exhaustion doctrine – namely that nation or tribal courts should enjoy the opportunity in the first instance to adjudicate challenges to their own jurisdiction. *See Nat'l Farmers*, 471 U.S. at 856-57 (tribal court must

---

[5] LECG grossly misrepresents the Peacemakers Court's briefing order when it states that the court recognized in that order that the action before it was moot. *See Opposition* at 10, ¶ 28. The court determined that, based upon LECG's representations to the Court, *preliminary* injunctive relief was not warranted at that time; the Court said nothing about the Nation's request for permanent injunctive relief. *See Order on Briefing*, *Kanji Stay Dec.* at Att. 29.

5

have "full opportunity to determine its own jurisdiction[,] . . . to rectify any errors it may have made[,] . . . [and] to explain to the parties the precise basis for accepting jurisdiction").

In sum, through its concerted actions in both this Court and the Peacemakers Court, LECG has openly defied the requirements of the exhaustion doctrine and the orders of the Nation's courts, which orders have been fully faithful to the doctrine's tenets.  LECG has caused the very "jurisdictional confrontation[]" it now purports to avoid, *Opposition* at 9, ¶ 27, and, in doing so, has both presented a textbook case for application of the doctrine and vividly underscored the doctrine's importance in safeguarding the integrity of the Nation's courts.

2.      <u>LECG Ignores the Uniform Body of Federal Court Precedent that Controls this Case and Instead Relies Upon Two Cases that are Readily Distinguishable</u>

In its *Statement*, the Nation established that the federal courts have uniformly held that the exhaustion doctrine precludes a party from litigating in federal court, as LECG seeks to do here, the validity of an arbitration clause and purported waiver of sovereign immunity when those very same issues are pending in a parallel, previously-filed tribal court action.  *See Statement* at 15-20 (discussing *Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 849-52 (8th Cir. 2003); *Bank One, N.A. v. Shumake*, 281 F.3d 507, 514-16 (5th Cir. 2002); *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 30-33 (1st Cir. 2000); *Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe*, 117 F.3d 61, 63, 65-68 (2d Cir. 1997);  *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1415-17 (8th Cir. 1996); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228-30 (9th Cir. 1989); *Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of the Mississippi in Iowa*, 401 F. Supp. 2d 952, 961-62 (N.D. Iowa 2005); *Calumet Gaming Group-Kansas, Inc. v. Kickapoo Tribe of Kansas*, 987 F. Supp. 1321, 1328-30 (D. Kan. 1997)).

6

LECG has no answer for this wealth of authority running directly counter to the relief it seeks from this Court. It can only note, in a single, cursory paragraph, that the cases do not explicitly address the issue of apparent authority, which LECG argues will ultimately be central to the disposition of this case on the merits. *See Opposition* at 17. But this purported distinction is absolutely beside the point. It goes to the merits of the cases, not to the principles upon which the courts based their exhaustion orders. Indeed, in two of the cited cases, *Bruce H. Lien* and *Attorney's Process & Investigation Servs.*, the underlying dispute as to the validity of the arbitration clause and purported waiver of sovereign immunity turned, as it does here, upon the authority of the signatory to such a clause to effect a waiver of immunity. *See Bruce H. Lien*, 93 F.3d at 1414-17 (disputed authority of Chairman and Secretary of Tribal Business Council); *Attorney's Process & Investigation Servs.*, 401 F. Supp. 2d at 954, 961-62 (disputed authority of individual representing himself as Chairman of Tribal Council). In ordering exhaustion, the courts in those cases did not venture into a substantive analysis of the signatories' authority (be it actual or apparent), which was beside the point. Rather, as with the myriad other cases cited above and discussed in the Nation's *Statement*, they mandated exhaustion because the disputes at issue arose in connection with tribal business activities and because the federal plaintiffs sought to evade tribal court jurisdiction over parallel, previously-filed actions, just as LECG seeks to do here. The nature of the authority by which the arbitration agreements had been entered into simply did not bear on this analysis.

In the face of this unanimity among the federal courts with respect to the doctrine's application to disputes over the validity of arbitration clauses, LECG directs the Court's attention to a single federal case, *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803 (7th Cir. 1993), and a single state appellate court case, *Granite Valley Hotel Ltd. P'ship v. Jackpot Junction Bingo &*

7

*Casino*, 559 N.W.2d 135 (Minn. Ct. App. 1997).  LECG, however, devotes scant attention to the two critical facts in those cases that are conspicuously absent here – the lack in either of any parallel, previously-filed tribal court action and the presence in both of a forum selection clause in the contract at issue.  In *Altheimer & Gray*, for example, the Seventh Circuit noted that *Iowa Mut. Ins. Co.* and *Nat'l Farmers Union Ins. Cos.* "dealt only with the situation where a tribal court's jurisdiction over a dispute had been challenged by a later-filed action in federal court[,]" and juxtaposed the case before it, where there had been "no direct attack on a tribal court's jurisdiction" and there was "no case pending in tribal court[.]"  *Id.* at 814.[6]  In addition, the Seventh Circuit reasoned, exhaustion would not "serve the policies articulated in *Iowa Mutual* and *National Farmers*" because "the tribal entity wished to avoid characterization of the contract as a reservation affair by actively seeking the federal forum."  *Id.* at 814-15.  That is, the Seventh Circuit held that the parties, by including a clause in the underlying contract wherein the parties agreed to "submit to the venue and jurisdiction of the federal and state courts located in the State of Illinois[,]" had waived the tribal court exhaustion requirement by designating the federal or state courts as the forums for resolution of their disputes.  *Id.* at 807, 815.  The Court of Appeals of Minnesota reached a similar conclusion in *Granite Valley Hotel*, where it held that exhaustion was not required in a dispute where the parties, again by virtue of a forum selection clause, consented to jurisdiction in the Minnesota courts, where there was no evidence of a previously-filed action in tribal court, and where the contract was performed entirely off-reservation.  559 N.W.2d at 136-38.[7]

---

[6] The Seventh Circuit also noted that the parties' dispute did not require interpretation of any tribal ordinance.  *Altheimer & Gray*, 983 F.2d at 814.  In contrast, as discussed *infra*, LECG's arguments on the merits hinge upon the Council's resolutions.

[7] While state courts are divested of jurisdiction as a matter of federal law if such jurisdiction would interfere with a tribe's right of self-government (the "infringement doctrine"), see *Iowa*

8

Arbitration clauses such as the one at issue here, however, differ fundamentally from forum selection clauses. Accordingly, in *Bank One, N.A.*, the Fifth Circuit firmly rejected the contention that an arbitration clause might accomplish the same waiver of the exhaustion requirement as the forum selection clause had in *Altheimer & Gray*: "The arbitration clause at issue in this case does not select a judicial forum for resolution of disputes. An arbitration clause that attempts to foreclose any and all access to courts bears little resemblance to a forum selection clause[.]" 281 F.3d at 515-16. Here, the language in the letter agreement relied upon by LECG is without question an arbitration clause, not a forum selection clause, and LECG does not argue otherwise. *See Letter Agreement*, *Kanji Stay Dec.* at Att. 4, p.4.[8] Moreover, unlike in

---

*Mut.*, 480 U.S. at 15 (citing *Fisher v. District Court of Sixteenth Judicial Dist. of Montana*, 424 U.S. 382, 386 (1976) and *Williams v. Lee*, 358 U.S. 217 (1959)), the Supreme Court has never addressed whether the exhaustion doctrine binds state courts. Thus, state courts have struggled with the question of whether their analyses of comity and abstention in this context should be controlled by the exhaustion doctrine, the infringement doctrine, or state common-law and statutory rules of comity, abstention, and first-filing. *See, e.g.*, *Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians*, 612 N.W.2d 709, 715-20 (Wis. 2000); *Drumm v. Brown*, 716 A.2d 50, 59-64 (Conn. 1998); *Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 289-92 (Minn. 1996). In light of the Minnesota Supreme Court's decision in *Gavle*, 555 N.W.2d at 290-92 (treating the exhaustion doctrine as a fact-specific application of the infringement doctrine and finding no infringement where no parallel tribal court action was pending), and the Court of Appeals' subsequent decision in *Matsch v. Prairie Island Indian Community*, 567 N.W.2d 276, 277-79 (Minn. Ct. App. 1997) (holding that a party may not circumvent the jurisdiction or determination of a tribal court by filing a duplicative action in state court), *Grand Valley Hotel* would have little if any precedential value in the State of Minnesota on the facts of this case, and certainly has no persuasive value here.

[8] LECG does not ask the Court to treat the arbitration clause as a forum selection clause – that is, LECG has not asked this Court to order the parties to arbitrate the question of the validity of the arbitration clause itself. Instead, LECG has asked this Court to adjudicate that question, just as the Nation has asked the Peacemakers Court to adjudicate the same. The only language in the letter agreement that could reasonably be construed as a forum selection clause is that which provides for the entry of "judgment upon any reward rendered by the arbitrator . . . by any State or Federal Court having jurisdiction thereof." *Letter Agreement*, *Kanji Stay Dec.* at Att. 4, p.4. No reward, of course, has been rendered by an arbitrator in connection with this dispute. With respect to the adjudication of the validity of the arbitration clause and purported waiver of sovereign immunity, the letter agreement indicates no preference as to forum, be it federal, state, or tribal. However, the exhaustion doctrine mandates that the appropriate forum, under the facts

*Altheimer & Gray* and *Grand Valley Hotel*, a parallel, previously-filed action challenging the validity of that arbitration clause is currently pending in the Peacemakers Court.

Finally, by no means have all federal courts agreed with the Seventh Circuit that a forum selection clause (expressly favoring the forum considering the threshold exhaustion issue) waives the mandatory exhaustion requirement, particularly in circumstances where, as here, the validity of the underlying contract is in dispute. *See Bruce H. Lien*, 93 F.3d at 1415, 1417 (exhaustion required in dispute over validity of contract containing arbitration clause, where contract identifies forum in which to seek injunctive relief pending arbitration); *Attorney's Process & Investigation Servs.*, 401 F. Supp. 2d at 956, 961 (exhaustion required in dispute over validity of contract containing arbitration clause, where contract identifies forum in which to resolve disputes as to arbitrability); *Snowbird Const. Co. v. United States*, 666 F. Supp. 1437, 1444 (D. Idaho 1987) (exhaustion required in dispute over validity of contract containing forum selection clause). This Court does not have to weigh in on that conflict because no forum selection clause is present here, a fact that totally undercuts LECG's reliance on *Altheimer & Gray*. In sum, LECG fails to identify a single case holding that the exhaustion of tribal court remedies is not mandatory when a party seeks to circumvent, by filing a duplicative federal court action, tribal court jurisdiction over a dispute regarding the validity of an arbitration clause.

3.  <u>The Source of Law Governing the Merits of the Parties' Dispute Does Not Determine Whether the Exhaustion of Tribal Court Remedies is Required or Whether the Dispute is Characterized as a Tribal Affair</u>

LECG strains to reduce the question as to what constitutes a valid waiver of the Nation's sovereign immunity, a question governed by federal and Nation law, to a single issue governed by the local law of the District of Columbia – whether Sheppard Mullin had apparent authority to

---

of this case, is the Peacemakers Court.

enter the letter agreement with LECG on the Nation's behalf.[9] After taking this enormous and unfounded leap (which allows LECG to make the incredible argument that the Nation clearly and unequivocally waived its sovereign immunity without itself having effected or approved such a waiver, without having authorized Sheppard Mullin to effect such a waiver, and without having knowledge that any such waiver occurred), LECG contends that exhaustion is not appropriate because this dispute does not implicate questions of Nation law or the Nation's affairs.[10] Again,

---

[9] A tribe's waiver of sovereign immunity must be "clear," see *C & L Enters., Inc., v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001) (citation omitted), and such waiver "cannot be implied but must be unequivocally expressed," see *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58-59 (1976) (citations omitted). By proceeding on the false premise that common-law agency principles bind the Nation like a private party, LECG radically misstates the body of law relevant to a determination as to whether a waiver of sovereign immunity may be premised on apparent authority. *See Opposition* at 15-16, 23. For example, an Indian tribe's sovereign immunity is "co-extensive with the United States' immunity," *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 773 (D.C. Cir. 1986) (citing *United States v. United States Fid. & Guar. Co.*, 309 U.S. 506, 514 (1940)), and the United States can not be bound by apparent authority, see *Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 153 (D.D.C. 2002) ("Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. . . . And this is so even though . . . the agent may have been unaware of the limitations upon his authority.") (quoting *United States v. Dist. of Columbia*, 669 F.2d 738, 748 n.13 (D.C. Cir. 1981) (quoting *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947))). Thus, as the Supreme Court recognized in *United States Fid. & Guar. Co.*, "[i]t is a corollary to immunity from suit on the part of the United States and the Indian Nations in tutelage that this immunity cannot be waived by officials. If the contrary were true, it would subject the government to suit in any court in the discretion of its responsible officers." 309 U.S. at 513.

[10] While it is premature for the Court to review the merits of this dispute, the Nation cannot ignore LECG's misrepresentation that "courts have consistently rejected" arguments regarding the authority of signatories to effect valid waivers of tribal sovereign immunity. *Opposition* at 23. In fact, the *only* case cited by LECG for this proposition, *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402 (Colo. Ct. App. 2004), is decidedly in the minority. The vast majority of federal and state courts addressing the issue have held that black-letter agency principles, including apparent authority, can not alone overcome the "clear and unequivocal" standard for waivers of tribal sovereign immunity. *See, e.g.*, *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1286-88 (11th Cir. 2001) (apparent authority of tribal chief and chairman could not operate to waive sovereign immunity); *World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 275-77 (N.D.N.Y. 2000) (apparent authority of casino management company with exclusive control over tribal casino's day to day operations

however, LECG fails to cite a single case holding that the application of the exhaustion doctrine hinges upon the source of law governing the merits of the underlying dispute or that the presence of tribal-law questions is a prerequisite to such application. Nor is the Nation aware of any such case, the absence of which is unsurprising given that a substantive choice of law analysis is premature until a threshold determination is made as to the appropriate forum to hear the merits of the dispute.[11]

Even if the local law of the District of Columbia (or any other jurisdiction, for that matter) were applicable to the merits of this dispute, that fact (which the Nation does not

---

could not operate to waive sovereign immunity); *Chance v. Coquille Indian Tribe*, 963 P.2d 638, 640-42 (Or. 1998) (apparent authority of president of tribe's wholly-owned economic development corporation could not operate to waive sovereign immunity); *see also, e.g.*, *Winnebago Tribe of Nebraska v. Kline*, 297 F. Supp. 2d 1291, 1303-04 (D. Kan. 2004) (signature of tribal corporation's agent did not effect valid waiver of sovereign immunity); *Calvello v. Yankton Sioux Tribe*, 584 N.W.2d 108, 112-13 (S.D. 1998) (participation of tribal attorney and tribal accountant in arbitration at behest of tribal chairman could not operate to waive tribal sovereign immunity where governing body of tribe did not approve participation); *Hydrothermal Energy Corp. v. Fort Bidwell Indian Community Council*, 170 Cal. App. 3d 489, 495-96 (Cal. Dist. Ct. App. 1985) (tribal chairman's signature on contract containing arbitration clause could not effect valid waiver of sovereign immunity where tribe had not expressly delegated authority to chairman to effect waiver). While LECG also relies upon *C & L Enters.,* 532 U.S. 411, and the cases cited therein, see *Opposition* at 19-20, none of those cases turned upon the authority of the signatory to effect a valid waiver of tribal sovereign immunity. *See, e.g.*, *C & L Enters.*, 532 U.S. at 423 n.6. Nor does the law with respect to foreign states' waivers of sovereign immunity provide a useful analogy here. *See Opposition* at 24. Unlike a waiver of tribal sovereign immunity, which may not be implied, a foreign state's waiver may occur by implication. *See* 28 U.S.C. § 1605(a)(1) (2006); *Restatement (Third) of the Law of Foreign Relations of the United States* § 456(a)(1) (1987).

[11] For example, in *Stock West Corp. v. Taylor*, 964 F.2d 912 (9th Cir. 1992), the Ninth Circuit explained: "Whether Colville Tribal law applies to a tort that involved certain acts committed on reservation land and other acts committed outside its territorial jurisdiction to induce another to perform a contract on tribal lands presents a colorable question that must be resolved in the first instance by the Colville Tribal Courts. Section 148(f) of the Restatement (Second) of Conflict of Laws provides that a factor to be considered in determining the proper forum for an action for fraud and misrepresentation is 'the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.' Abstention in this matter will permit the Colville Tribal Courts to explain whether this principle is a part of its statutory or common law." *Id.* at 920 (internal citation omitted).

concede) would not excuse the mandatory application of the exhaustion doctrine in this case. As the Seventh Circuit explained in *Altheimer & Gray*, "[t]he interpretation of another jurisdiction's laws . . . does not alone foreclose application of the tribal exhaustion rule. A tribal court, presumably, is as competent to interpret federal law as it is state law." 983 F.2d at 814 (citing *Iowa Mut.*, 480 U.S. at 19); *see also Ninigret Dev. Corp.*, 207 F.3d at 31 ("[T]he doctrine applies even though the contested claims are to be defined substantively by state or federal law."). In addition, the Supreme Court has repeatedly found that tribal courts, like state courts, are fully competent to decide questions of federal law. *See El Paso Natural Gas v. Neztsosie*, 526 U.S. 473, 485 n.7 (1999); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 (1978). Thus, the source of law that governs the merits of a dispute does not dictate whether the exhaustion of tribal court remedies is required in the first instance or whether a dispute is characterized as a tribal affair. *See Gaming World*, 317 F.3d at 846, 851-52 (tribal court is appropriate forum for adjudication of *qui tam* claim under 25 U.S.C. § 81 in "dispute involv[ing] activities undertaken by tribal government within reservation lands"); *Bruce H. Lien*, 93 F.3d 1420-21 (tribal court is appropriate forum to resolve question as to whether Indian Gaming Regulatory Act or National Indian Gaming Commission divests tribal court of jurisdiction over contract dispute growing out of "[t]ribal governmental activity involving a project located within the borders of the reservation"); *Stock West Inc.*, 873 F.2d at 1224 & n.5, 1229-30 (exhaustion required in contract dispute where relevant contracts governed by Washington and Oregon law); *Calument Gaming Group-Kansas*, 987 F. Supp. at 1324, 1329 (describing dispute as "reservation affair" and ordering exhaustion where federal plaintiff asserts claims under Kansas law).

Moreover, LECG's attempt to cast this dispute as one exclusive of questions of Nation law is betrayed by its own reliance on the substance of the Council's formal resolutions.

LECG's arguments on the merits hinge upon its allegation that those resolutions "did not prohibit or in any way limit" Sheppard Mullin's authority to waive the Nation's sovereign immunity and "did not mention or reserve [the Nation's] sovereign immunity in any way." *Opposition* at 2-5, ¶¶ 2, 9.[12] Thus, LECG itself cannot avoid proffering an analysis and interpretation of Nation law as integral to this dispute. In light of the federal policies underlying the exhaustion doctrine, however, that analysis and interpretation must take place in the Peacemakers Court. *See, e.g., Iowa Mut.*, 480 U.S. at 16; *Basil Cook*, 117 F.3d at 66; *Burlington Northern R.R. Co.*, 940 F.2d at 1246.

      Similarly, LECG's attempt to characterize this dispute as a non-tribal affair arising in the District of Columbia (based solely upon the fact that LECG and Sheppard Mullin consummated the letter agreement containing the boilerplate arbitration clause in the District) finds no support in the law and is patently inconsistent with the undisputed facts, discussed *supra*. It is well-settled that the existence of off-reservation contacts does not excuse application of the exhaustion doctrine where the genesis of a dispute lays on-reservation. *See, e.g., Ninigret Dev. Corp.*, 207 F.3d at 32 (dispute arising from tribal housing authority's development of off-reservation low-income housing project for tribal members); *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1168-70 (10th Cir. 1992) (exhaustion required in interpleader action filed by off-reservation bank holding funds subject to contract dispute between tribe and non-Indian company stemming from on-reservation gaming activity); *Stock West Corp. v. Taylor*, 964 F.2d 912, 919 (9th Cir. 1992) (although disputed document "was delivered . . . off the reservation[,]" exhaustion required because totality of facts show that activities giving rise to

---

[12] These allegations expose LECG's attempt to establish a waiver of the Nation's sovereign immunity by negative implication and thereby to turn on its head the "clear and unequivocal" standard.

14

contract claims were "commenced on tribal lands"); *Williams-Willis v. Carmel Fin. Corp.*, 139 F. Supp. 2d 773, 779 (S.D. Miss. 2001) (requiring off-reservation defendant that made "routine purchase of consumer paper from another lender," which lender had conducted on-reservation business activities with tribal members, to exhaust tribal court remedies). Here, it is plain that the parties' dispute very much concerns activities taking place within the Nation's Territories, activities including the Council's investigation into the management and development of the Nation's gaming enterprises and LECG's role in that investigation. Where LECG has sought to circumvent the Peacemakers Court's jurisdiction over an action seeking to resolve that dispute, exhaustion is required regardless of the source of law that may govern the dispute on the merits.

4.  The Futility and Bad Faith Exceptions to the Exhaustion Doctrine Do Not Apply Here, and the Court Should Reject LECG's Attack on the Fundamental Federal Policies that Animate the Doctrine

The Nation outlined in its *Statement* the exceptions to the exhaustion doctrine and demonstrated why none of those exceptions applies to this case. *See Statement* at 28-34. Although LECG does not dispute any of the Nation's specific arguments (including the jurisdiction of the Peacemakers Court over LECG and the subject matter of the Nation's action), LECG nevertheless seeks to manipulate the futility and bad faith exceptions to substantiate LECG's utter disregard for the Nation's courts. It is readily apparent, however, that neither exception applies here. As LECG recognizes, see *Opposition* at 17-18, the futility exception is directed at circumstances where "exhaustion would be futile *because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction*[,]" *Nat'l Farmers*, 471 U.S. at 857 n.21 (italics added), and the cases cited by LECG simply hold that exhaustion is futile if no tribal court exists. *See Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes of Texas*, 261 F.3d 567, 572 (5th Cir. 2001) (exhaustion not required where "no tribal court properly existed");

*Johnson v. Gila River Indian Community*, 174 F.3d 1032, 1036 (9th Cir. 1999) (court remands for determination as to whether functioning tribal appellate court exists); *Krempel v. Prairie Island Indian Community*, 125 F.3d 621, 622-24 (8th Cir. 1997) (exhaustion not required where it is "undisputed that no tribal court existed" at the time of plaintiff's complaint).[13]

LECG cannot claim with a straight face that it has lacked an adequate opportunity to challenge the jurisdiction of the Peacemakers Court. The Court, which is a long-standing institution governed by a comprehensive set of civil procedure rules, expressly ordered the parties to brief the question of its jurisdiction. While the Nation responded to that order with a substantial brief, LECG chose to ignore it, as it has chosen to ignore every other order issued by the Peacemakers Court. LECG cannot transform its own dogged refusal to respect the opportunities and procedures afforded by the Peacemakers Court into a credible argument that it has lacked the opportunity to challenge that court's jurisdiction.

Further, LECG's assertion that exhaustion is futile because it "would certainly be returning to this Court for a decision on the merits of Seneca's sovereign immunity claim" following proceedings in the Peacemakers Court, *Opposition* at 19, ignores the well-settled rule that LECG is barred from relitigating the merits of that claim in this Court unless it both exhausts its remedies in the courts of the Seneca Nation and this Court subsequently concludes that those courts acted without jurisdiction. *See Statement* at 34-35. Likewise, LECG's argument that

---

[13] This Court's decision in *Ransom v. Babbitt*, 69 F. Supp. 2d 141 (D.D.C. 1999) is irrelevant here. In *Ransom*, the Court reviewed the Interior Board of Indian Appeals' administrative response to an internal dispute within the St. Regis Mohawk Tribe regarding which tribal entity the United States should recognize as the valid tribal government. While the Court recognized that "Tribal Court mechanisms [were] disputed and, ultimately, non-functional," *id.* at 153, its analysis focused on the Board's repeated invocation of the exhaustion doctrine to avoid final resolution of the dispute, while the Bureau of Indian Affairs simultaneously pressured the Tribe to recognize the Bureau's preferred, but unpopular, constitutional form of government. *Id.* at 146, 153-55.

exhaustion is somehow futile because the courts of the Seneca Nation have previously ruled, as a matter of Nation law, that the Nation is entitled to sovereign immunity, see *Opposition* at 11, 18-19, is nonsensical. It is undisputed, as a matter of *federal* law, that the Nation enjoys sovereign immunity. *See Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754-55, 760 (1998). The question in this case is whether the Nation voluntarily, clearly, and unequivocally waived that immunity, and there is no evidence that the Peacemakers Court has prejudged that question.[14]

LECG next proceeds, under the guise of arguing the bad faith exception, to attack the powerful congressional policies underpinning the exhaustion doctrine. LECG's failure to appreciate the vital role that tribal courts play in tribal sovereignty and self-government, see *Iowa Mut.*, 480 U.S. at 14-17 and *Nat'l Farmers*, 471 U.S. at 856-57, is readily apparent throughout its *Opposition*. However, "[t]ribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians[,]" *Santa Clara Pueblo*, 436 U.S. at 65-66 (footnote and citations omitted), and civil jurisdiction over "the activities of non-Indians on reservation lands" "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute[,]" *Iowa Mut.*, 480 U.S. at 18. It is not bad faith for the Nation to take the position that is own judiciary should resolve a question so central to its self-governance as that of whether the Nation's sovereign immunity has been pierced under the facts of this case. Rather, it is a vindication of the important value that both the Nation and the federal government have placed on maintaining the vitality and integrity of the Nation's courts.

---

[14] The Nation's position regarding the source of law governing the alleged waiver of sovereign immunity, like LECG's position regarding the same, also has no bearing on the application of the exhaustion doctrine, which identifies the appropriate forum for the parties to present those positions.

In the end, LECG trivializes the legitimacy of the Peacemakers Court, referring to proceedings in that court as a "frolic and detour[,]" "an enormous distraction[,]" "<u>irrelevant</u>[,]" and a "pointless exercise[.]" *Opposition* at 11, 18 (emphasis in original). It comes as no surprise then that LECG endorses the fifty-two page concurring opinion of Justice Randall in *Grand Valley Hotel*, see *Opposition* at 15 n.5, which opinion, *inter alia*, calls for the abolition of trust status for all Indian lands, 559 N.W.2d at 159-60, proposes that "Indian reservations [be] reorganized as standard Minnesota cities and towns[,]" *id.* at 160, refers to Indian reservations as places where "basic human rights" are not guaranteed, *id.* at 147, juxtaposes "real" state and federal court judges with "hired" tribal court judges, *id.* at 144, 147, and describes Indian sovereignty as a "myth" propagated by the "intelligentsia" that is akin to latter-day "Elvis sighting[s,]" *id.* at 163. The federal courts, however, have not been receptive to unfounded attacks on the integrity and impartiality of tribal courts. *See, e.g.*, *Iowa Mut.*, 480 U.S. at 19 ("The alleged incompetence of tribal courts is not among the exceptions to the exhaustion requirement established in [*Nat'l Farmers*], and would be contrary to the congressional policy promoting the development of tribal courts.") (footnote omitted). As the First Circuit explained in *Ninigret Dev. Corp.*:

> The unsupported averment that non-Indians cannot receive a fair hearing in a tribal court flies in the teeth of both congressional policy and the Supreme Court precedents establishing the tribal exhaustion doctrine. . . . [A] party cannot skirt the tribal exhaustion doctrine simply by invoking unfounded stereotypes.

207 F.3d at 34 (citations omitted). LECG's invitation to second-guess the wisdom of the federal policies underpinning the exhaustion doctrine should fare no better here.

## CONCLUSION

Because this case goes to the core of the exhaustion doctrine, the Nation respectfully requests that this Court stay all proceedings in this duplicative action until the courts of the Seneca Nation have had a full and fair opportunity to determine their jurisdiction over LECG and the subject matter of the Nation's action, and if they find such jurisdiction to exist, to adjudicate the parties' dispute on the merits.[15]

Respectfully submitted this 14th day of November, 2006.

    /s/ Riyaz A. Kanji
Riyaz A. Kanji (D.C. Bar No. 455165)
Kanji & Katzen, PLLC
101 North Main Street
Suite 555
Ann Arbor, Michigan 48104
Ph: (734)-769-5400
Fax: (734)-769-2701
Email: rkanji@kanjikatzen.com

---

[15] As set forth in the Nation's *Statement* at 34-35, the duration of the stay turns upon the Peacemakers Court's jurisdictional determination. If that court concludes that it lacks jurisdiction over LECG or the subject matter of the parties' dispute, this Court would then proceed to adjudicate the merits of the dispute. If, however, the Peacemakers Court concludes that it possesses jurisdiction, then this Court should stay its hand until the Peacemakers Court adjudicates the merits of the dispute. After that court's adjudication on the merits, and LECG's exhaustion of the appellate remedies available in the courts of the Seneca Nation, this Court would then proceed to review the jurisdictional determination of the Nation's courts. If this Court upheld the jurisdictional determination under federal law, then it would not readjudicate the merits. If, however, this Court found that the Nation's courts acted without jurisdiction, it would then adjudicate the merits of the dispute.