IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LECG, LLC )<br>          Plaintiff, )<br> )<br>v. )<br> )<br>THE SENECA NATION OF INDIANS )<br> )<br>          Defendant. )<br> ) | Civil Case No. 1:06CV01303 (RCL) |

**OPPOSITION TO DEFENDANT'S MOTION
TO CONTINUE DATE TO OPPOSE PLAINTIFF LECG, LLC'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff LECG, LLC ("Plaintiff" or "LECG"), by and through its undersigned counsel, opposes the motion of Defendant The Seneca Nation of Indians' ("Defendant" or "Seneca") to continue the date for filing Seneca's opposition to LECG's motion, under Fed. R. Civ. Pro. 12(c), for judgment on the pleadings.

Seneca's motion and other litigation tactics bring to mind Dickens' fictional case of *Jarndyce v. Jarndyce*, where the legal costs devoured the entire estate before the case was ever resolved. Arguing myriad Byzantine complexities of tribal exhaustion in its memorandum of law and, even more so, in its reply brief in support of its motion to stay, Seneca tries to make this Court lose sight of the fact that this is a very simple case with compelling facts. These <u>facts</u> mandate a ruling in LECG's favor on its motion for judgment on the pleadings. By seeking to defer a ruling on that motion, Seneca makes clear that it wants this Court to steer clear from these facts and to decide its motion to stay in a vacuum. But Seneca's obvious desire to avoid the undisputed facts does not justify a continuance, and its request for a continuance should therefore be denied.

LECG has a contract with Seneca, which Seneca partially performed and does not dispute.  When Seneca failed to pay the full amount owed under that contract, LECG began the *first* action, an arbitration against Seneca before JAMS in accordance with the terms of the contract.  Seneca appeared in that arbitration, through its Senior Policy Advisor and Counsel, and contested JAMS' jurisdiction over Seneca.  (Ex. 5 to Amend. Compl.)  Rejecting Seneca's arguments, JAMS "found the . . . action properly commenced and within our jurisdiction, pursuant to the parties' contract."  (Ex. 6 to Amend. Compl.)  Rather than proceeding with the arbitration and, if necessary, later challenging the arbitrator's jurisdiction in court, like any other litigant would be required to do, Seneca instead months later began an action in its Peacemakers' Court against JAMS as well as LECG, seeking to enjoin the arbitration from going forward.  (Ex. 7 to Amend. Compl.)  That action sought only to prevent the arbitration and had absolutely nothing to do whatsoever with resolving the merits of LECG's contractual damages claims against Seneca.  The action was nothing more than an attempt to block JAMS from deciding LECG's arbitration claim.

LECG was required to turn to this Court for a determination that Seneca had waived its sovereign immunity, only to face yet more tactical gamesmanship on Seneca's part.  Seneca does not contest this Court's jurisdiction to decide whether Seneca waived sovereign immunity in the parties' contract — in fact Seneca went through great pains to expressly submit itself to this Court's jurisdiction — but rather invokes tribal exhaustion, a purely "prudential" rule.  *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997).  As construed by Seneca, tribal exhaustion means quite literally what it says — any claimant

must first exhaust itself financially litigating in Seneca's tribal court before recourse in any other forum is available.

Seneca thus treats tribal exhaustion as a patch to plug the hole in its sovereign immunity protection that the Supreme Court opened in its decision in *C & L Enterprises, Inc. v. Citizens Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001) ("*Potawatomi*"), where the Court held that tribes waive sovereign immunity by agreeing (as Seneca did here) to arbitrate disputes in a contract and to have arbitration awards enforced in the courts. With sovereign immunity no longer available as an absolute defense to LECG's claims, tribal exhaustion becomes Seneca's backstop. As construed by Seneca, tribal exhaustion absolutely forestalls any finding by this court that there has been any waiver of sovereign immunity, thus rendering *Potawatomi*, for all practical purposes, a dead letter of the law.

Seneca's view of tribal exhaustion stands the doctrine's purpose of promoting tribal sovereignty on its head. As the court found in *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 815 (7th Cir. 1993), "[t]o refuse enforcement of this routine contract provision would be to undercut the Tribe's self-government and self-determination. . . . If contracting parties cannot trust the validity of choice of law and venue provisions, [the Tribe] may well find itself unable to compete and the Tribe's efforts to improve the reservation's economy may well come to naught." The court in *Granite Valley Hotel Ltd. Partnership v. Jackpot Junction Bingo and Casino*, 559 N.W.2d 135, 138 (Minn. Ct. App. 1997), *rev. denied*, No. C8-96-1024 (Minn. 1997), underscored this point.[1]

---

[1] Like this case, the parties there "expressly wrote into the contract a waiver of immunity and an express consent to [a non-tribal court forum]. Nothing was put into the contract, or even discussed by [the tribe] formally or informally, that they wanted to 'reserve the right to back out' of this express waiver of immunity. Neither the negotiations nor the written contract contained any reference to [the tribe's] tribal

We submit that the Court should consider what it would mean if Seneca's application of tribal exhaustion were accepted here. Seneca would be free to retain prominent individuals and firms as agents, empower these agents to hold themselves out in any of the 50 states as empowered by tribal resolution to make agreements on behalf of the tribe (including agreements waiving the tribe's sovereign immunity), do nothing when afforded a timely opportunity to disavow the agents' agreements on Seneca's behalf, perform the agreements to the extent that Seneca chose, repudiate any portions of the agreements that Seneca later found unacceptable, and leave contracting parties with no recourse other than to litigate in Seneca's tribal court where (in Seneca's own words to JAMS) "Nation courts have ruled repeatedly that the Nation and its subdivisions have sovereign immunity." (Ex. 5 to Amend. Compl. at p. 1.) As the courts in *Altheimer* and *Granite Valley* recognized, such a myopic and one-sided construction of tribal exhaustion is ultimately self-defeating, crippling the very tribal sovereignty and economic vitality that the doctrine was intended to advance.

It is time for this Court to end Seneca's delays and detours, its bad faith litigation tactics to wear out LECG, and its outright disregard for this Court's authority. The facts are undisputed, and this Court has jurisdiction to decide that: (1) Seneca's law firm agent in the District had apparent authority to enter into an arbitration agreement with LECG waiving Seneca's sovereign immunity under *Potawatomi*; (2) Seneca in fact waived its sovereign immunity by agreeing to arbitrate before JAMS and to allow any arbitration award to be enforced in the courts; and (3) the arbitration proceeding brought by LECG against Seneca before JAMS should proceed. There is no legitimate issue of tribal

---

court system." *Id.* at 140 (J. Randall, concurring). Nevertheless, the tribe, like Seneca here, insisted that dispute could only be adjudicated in tribal court, a position that Judge Randall's concurrence rightly declaimed as unjust. *Id.* at 147.

exhaustion because the apparent authority of Seneca's law firm agent does not require consideration of any tribal resolutions and does not involve internal tribal affairs or self-government. There is no reason to further delay a decision on these undisputed facts, which demonstrate that tribal exhaustion is not applicable in this case because Seneca waived its sovereign immunity and submitted to the arbitral forum. There is most definitely no reason to allow Seneca more time to oppose LECG's motion for judgment on the pleadings, after it has had more than ample opportunity to respond to that motion.

## CONCLUSION

For all the foregoing reasons, LECG respectfully requests that the Court deny Seneca's motion to continue the time for it to oppose LECG's motion for judgment on the pleadings.

Dated: November 20, 2006

                            Respectfully submitted,

                          _/s/ Timothy A. Ngau_____
                         John F. Cambria, Esq.
                         ALSTON & BIRD LLP
                         90 Park Avenue
                         New York, NY 10016
                         Tel.: (212) 210-9400
                         (Admitted *pro hac vice*)

                         Timothy A. Ngau, Esq.
                         (D.C. Bar no. 339333)
                         ALSTON & BIRD LLP
                         The Atlantic Building
                         950 F Street, N.W.
                         Washington, D.C. 20004
                         Tel.: (202) 756-3300

                         Attorneys for Plaintiff LECG, LLC