SENECA NATION OF INDIANS
ALLEGANY TERRITORY
PEACEMAKERS COURT

| | |
|---|---|
| SENECA NATION OF INDIANS,<br><br>Plaintiff<br><br>vs.<br><br>JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. (JAMS) and LECG, LLC,<br><br>Defendants | FINDINGS OF FACT AND CONCLUSIONS OF LAW<br><br>CA #0125-06-1 |

This Court, having considered the jurisdictional brief and supporting materials submitted by Plaintiff Seneca Nation of Indians (the "Nation") and the various letters sent by Defendant LECG, LLC ("LECG"), and having determined that oral argument is not necessary, hereby enters the following findings of fact and conclusions of law regarding its jurisdiction over the issues and parties in this action.

## FINDINGS OF FACT

1. The Nation is the sole owner of the Seneca Gaming Corporation. The Nation, through the Seneca Gaming Corporation and its wholly-owned subsidiaries (collectively, the "Gaming Companies"), operates gaming facilities on the Nation's treaty-protected Territories in Western New York. The gaming industry is vitally important to the economy of the Nation, to the general welfare of the Seneca People, and to the Nation's goal of self-government. *See Resolution of the Council of the Seneca Nation of Indians Re: Appointment of an Independent Counsel to Investigate the Nation's Casino Development and Management* (Nov. 13, 2004)

1

(hereinafter, "*Resolution*"), *Declaration of Thomas C. Brady in Support of Plaintiff's Jurisdictional Brief* at Att. 1 (hereinafter, "*Brady Dec.*").

2. In 2004, the Nation developed significant concerns regarding the financing, operation and management of the Gaming Companies. The Nation's Council undertook a confidential investigation to ensure that the Nation's gaming facilities had been "constructed, financed, operated and managed by the [Gaming Companies] in accordance with their Charters and the laws of the Nation" and that all financial transactions were conducted at arm's length, in the best interests of the Nation, in accordance with their fiduciary and other responsibilities to the Nation, free of any conflicts of interest, and in conformity with all applicable laws. Such action was taken on November 13, 2004, when the Council, at a regular session held on the Nation's Allegany Territory, unanimously passed a resolution regarding the "Appointment of an Independent Counsel to Investigate the Nation's Casino Development and Management" (the "Resolution"). *See Resolution, Brady Dec.* at Att. 1.

3. In the Resolution, the Council appointed the law firm of Sheppard, Mullin, Richter & Hampton LLP as Independent Counsel ("Sheppard Mullin" or "Independent Counsel") to conduct an independent review in order to address the Council's concerns. The Resolution empowered the Independent Counsel to retain qualified forensic auditors and such other consultants as the Independent Counsel deemed necessary to facilitate its review of all financial transactions conducted by or on behalf of the Gaming Companies. The Resolution also authorized and empowered the Independent Counsel to interview any officers, employees and staff of the Gaming Companies, the Nation and any affiliated entities to determine their knowledge of the matters under inquiry and to subpoena relevant documents and testimony. The

2

Resolution did not authorize the Independent Counsel to subject the Nation to binding arbitration or to otherwise waive the Nation's sovereign immunity from unconsented legal proceedings. *Id.*

4. Thereafter, Sheppard Mullin contacted LECG regarding the provision of forensic auditing services in connection with the investigation. *See LECG, LLC Invoice #40915, Re: Seneca Nation of Indians, Services Rendered Through November 30, 2004*, Brady Dec. at Att. 3.

5. On November 29, 2004, LECG and Sheppard Mullin entered into a letter agreement "Re: Internal accounting investigation for Seneca Nation of Indians" outlining the terms and conditions of an agreement to provide such services and attaching LECG's "Standard Commercial Terms" (collectively, the "letter agreement"), which included a clause providing for final and binding arbitration of any dispute arising out of the interpretation, performance or breach of the letter agreement. *See Letter from J. Geoffrey Colton to Mark E. Nagle dated November 29, 2004 Re: Internal accounting investigation for Seneca Nation of Indians*, Brady Dec. at Att. 4.

6. LECG has alleged that Sheppard Mullin signed the letter agreement on behalf of the Nation and that the Resolution authorized Sheppard Mullin to subject the Nation to binding arbitration and to waive the Nation's sovereign immunity via the letter agreement. *See Letter from John F. Cambria to Jessica Centeno dated December 1, 2005 Re: LECG, LLC v. The Seneca Nation of Indians*, Brady Dec. at Att. 17; *Complaint for Declaratory Relief, LECG, LLC v. The Seneca Nation of Indians, Case # 1:06-CV-01303 (D.D.C. July 24, 2006)* (hereinafter, "*LECG Complaint*"), Brady Dec. at Att. 26.

7. The Nation has alleged that it had no knowledge of the contents of the letter agreement, including the provision purportedly submitting controversies to binding arbitration, until almost a year after it was signed when LECG made attempts to collect the balance

3

allegedly due for its services; that neither the Council nor any officer of the Nation ever reviewed, approved, or signed the letter agreement; and that the Council never passed any resolution waiving the Nation's sovereign immunity with respect to that agreement. *See Complaint*; *Affidavit of Maurice A. John, January 25, 2006* (hereinafter "*John Affidavit*"); *Letter from Robert Odawi Porter to Jessica Centeno dated November 22, 2005 Re: Response to Arbitration Demand of LECG, LLC* (hereinafter, "*Arbitration Response*"), *Brady Dec.* at Att. 15.

8. Between December, 2004 and April, 2005, LECG (including its Principals, Experts, Managing Consultants, Senior Consultants, and Senior Managing Consultants) repeatedly entered the Nation's Territories to perform hundreds of hours of work, which included the imaging of hard drives, preserving data, extracting emails, retrieving files and financial data from the computer systems of the Gaming Companies, gathering and reviewing documents in the possession of the Nation and the Gaming Companies, and interviewing officers and employees of the Nation and the Gaming Companies and others. For example, over the course of three weeks in January 2005, LECG entered the Nation's Territories on numerous occasions to conduct interviews, to review documents, to preserve and extract electronic data, to perform other forensic accounting activities, and to present preliminary findings to the Nation's Council. *See LECG, LLC Invoice #44832, Re: Seneca Nation of Indians, Services Rendered Through April 30, 2005, Brady Dec.* at Att. 5; *LECG, LLC Invoice #43727, Re: Seneca Nation of Indians, Services Rendered Through March 31, 2005, Brady Dec.* at Att. 6; *LECG, LLC Invoice #42748, Re: Seneca Nation of Indians, Services Rendered Through February 28, 2005, Brady Dec.* at Att. 7; *LECG, LLC Invoice #42199, Re: Seneca Nation of Indians, Services Rendered Through January 31, 2005, Brady Dec.* at Att. 8; *LECG, LLC Invoice #41542, Re: Seneca Nation of Indians, Services Rendered Through December 31, 2004, Brady Dec.* at Att. 9.

9. Over the course of its work, LECG submitted invoices for its services to Sheppard Mullin, and Sheppard Mullin forwarded those invoices to the Nation. The Nation has made payments to LECG totaling over $270,000.00. *See Letter from Mark E. Nagle to Maurice A. John dated January 25, 2005 Re: LECG, LLC Billing, Brady Dec.* at Att. 10; *Checks from the Seneca Nation of Indians to the Order of LECG, LLC dated December 20, 2004, February 25, 2005, March 11, 2005, and April 1, 2005, Brady Dec.* at Att. 11.

10. On or about April 1, 2005, Sheppard Mullin and LECG presented the final findings and conclusions of their investigation to the Nation's Council, President, Treasurer, and legal counsel in Council Chambers on the Nation's Territories. This presentation included erroneous accounting information purportedly establishing that one of the Gaming Companies had effectively made a $6.3 million interest-free loan to Klewin Construction, the principal contractor for the construction of the Nation's Seneca Niagara Casino, which is located on the Nation's Niagara Territory. *See Letter from Roscoe C. Howard, Jr. to Martin Seneca dated April 27, 2005* (hereinafter, "*Howard Letter*"), *Brady Dec.* at Att. 12; *Letter from John I. Salomon to Roscoe Howard dated April 26, 2005* (hereinafter, "*Salomon Letter*"), *Brady Dec.* at Att. 13; *LECG Complaint, Brady Dec.* at Att. 26; *Jurisdictional Brief* at 6.

11. On April 7, 2005, the same erroneous information was provided to the Seneca Gaming Corporation's Board of Directors and Audit Committee, in a presentation again taking place on the Nation's Territories. *See Howard Letter, Brady Dec.* at Att. 12; *Salomon Letter, Brady Dec.* at Att. 13.

12. A few weeks later, the Vice President of Finance of the Gaming Companies reported to Sheppard Mullin that he could not reconcile the reported $6.3 million interest-free loan with

SNFGC's financial records. Sheppard Mullin forwarded this information to LECG. *See Howard Letter, Brady Dec.* at Att. 12.

13. In a letter dated April 26, 2005, LECG confirmed that it had erroneously reported the amount of payments made to Klewin Construction and that, in fact, Klewin Construction was underpaid by $1.5 million. *See Salomon Letter, Brady Dec.* at Att. 13.

14. The Nation did not pay further invoices submitted by LECG to Sheppard Mullin after the aforementioned error was identified and admitted by LECG. *See Letter from Robert Odawi Porter to Catherine J. McEnearney dated September 2, 2005 Re: Outstanding Invoices, Brady Dec.* at Att. 33.

15. It is plain from LECG's course of conduct within the Nation's Territories, including, *inter alia,* its presentations to the Council, its presence over a period of several months on the Territories to obtain the information and data necessary to prepare its reports and presentations to the Council, and from the Nation's payment of over $270,000.00 to LECG, that LECG actively engaged in commercial dealings with the Nation, although the precise contours and terms of the parties' relationship are in dispute. *See supra,* FOF 8-11.

16. On October 27, 2005, LECG filed with JAMS a demand for arbitration against the Nation regarding sums allegedly owed by the Nation for services rendered, seeking over $800,000 plus interest. *See Demand for Arbitration dated October 27, 2005 filed by Claimant LECG, LLC against Respondent the Seneca Nation of Indians, Brady Dec.* at Att. 14.

17. In a letter dated November 22, 2005, the Nation advised JAMS that it is a sovereign Indian nation recognized by the United States and has "immunity from unconsented lawsuits or arbitration proceedings that may arise in any forum." The Nation further advised that it had not waived its sovereign immunity with respect to any dispute with LECG and opposed any attempt

6

by LECG or JAMS to advance the arbitration. *Arbitration Response, Brady Dec.* at Att. 15; *Letter from Robert Odawi Porter to Joseph C. Edmonds dated January 17, 2006 Re: Response to Notice of Commencement of Arbitration, Brady Dec.* at Att. 16.

18. The Nation initiated this action in January 2006 seeking to temporarily and permanently enjoin Defendants from commencing, prosecuting, administering, carrying on, holding and/or determining any arbitration proceedings brought by LECG against the Nation arising out of LECG's claim that the Nation owes LECG substantial sums for services rendered. *See Complaint; John Affidavit.*

19. The Nation's Complaint requires that the Court adjudicate and declare the rights of the parties because the Court cannot rule on the Nation's request for injunctive relief without making a determination as to the rights and legal relations of the parties with respect to the waiver of sovereign immunity alleged by LECG and the Nation's obligation to arbitrate its dispute with LECG. *See Complaint*; CPR § 2-102 (jurisdiction of Peacemakers Court to issue declaratory judgment); CPR § 7-107 (pleadings shall be interpreted to do substantial justice); *see also* CPR § 1-104 (requiring liberal interpretation of Civil Procedure Rules to secure just, speedy, and inexpensive determination of every civil action).

20. This Court granted an Order to Show Cause on January 25, 2006. Such order included temporary injunctive relief as requested (but did not then address or resolve the Nation's request for permanent relief), which temporary relief was lifted pursuant to an Amended Order to Cause issued by this Court on February 14, 2006 after the parties agreed to hold all judicial and arbitration proceedings in abeyance pending attempts to resolve the dispute. This action was still pending before this Court after the lifting of the temporary relief as agreed

to by the parties. *See Letter from Thomas C. Brady to John F. Cambria dated February 7, 2006 Re: Seneca Nation of Indians v. JAMS and LECG, LLC, Brady Dec.* at Att. 23.

21. On July 24, 2006, LECG informed the Nation that it would reinstitute arbitration and/or other legal proceedings against the Nation and on the same day LECG filed an action in the United States District Court for the District of Columbia. *See Letter from John F. Cambria to Thomas C. Brady dated July 18, 2006 Re: LECG, LLC v. The Seneca Nation of Indians, Brady Dec.* at Att. 24; *LECG Complaint, Brady Dec.* at Att. 26.

22. The issues raised by LECG in the federal court action encompass the same issues raised by the Nation in this action, including whether the Resolution authorized Sheppard Mullin to bind the Nation to arbitrate disputes with LECG or to otherwise waive the Nation's sovereign immunity, whether the letter agreement constituted a valid waiver of the Nation's sovereign immunity subjecting the Nation to binding arbitration, and whether LECG may arbitrate without the Nation's consent a dispute as to sums allegedly owed for services rendered. LECG seeks a ruling from the federal court that the Nation waived its sovereign immunity pursuant to the terms of the letter agreement and a declaration that effectively compels the Nation to arbitrate the underlying dispute between the parties. Therefore, the parties raise issues and seek relief of an identical nature. *See Complaint; LECG Complaint, Brady Dec.* at Att. 26.

23. On the Nation's application, this Court then granted on July 24, 2006 a Second Amended Order to Show Cause temporarily restraining LECG from commencing, prosecuting, administering, carrying on, holding and/or determining any arbitration proceedings against the Nation until the matter could be determined and directed the parties to appear on August 21, 2006 for a preliminary injunction hearing. The Court did not address or resolve the Nation's request for permanent relief at that time.

24. In a letter dated August 1, 2006, LECG informed the Court that it did not recognize the Court's jurisdiction over it or over any aspect of the dispute between LECG and the Seneca Nation of Indians and that it would not appear for the previously scheduled hearing or at any other date. LECG's position was restated in a letter from its counsel to the Court dated August 11, 2006. *Letter from John F. Cambria to the Honorable Norma Kennedy and the Honorable Margaret Abrams dated August 1, 2006, Brady Dec.* at Att. 27; *Letter from John F. Cambria to the Honorable Norma Kennedy and the Honorable Margaret Abrams dated August 11, 2006, Brady Dec.* at Att. 28.

25. After LECG failed to appear on August 21, 2006, and because of LECG's threshold challenge to its jurisdiction, the Court on August 30, 2006 set a briefing schedule requiring the parties to exchange principal briefs addressing all jurisdictional issues on September 29, 2006 and to exchange reply briefs on October 21, 2006. The Nation timely filed its principal brief on September 29, 2006 and on that date served copies thereof on Defendants.

26. On September 25, 2006, the Court received from LECG's counsel a letter announcing LECG's position that this action is moot because LECG will temporarily not seek to advance the arbitration proceeding while the issues are pending before the federal court and representing that the parties agree that the issue of sovereign immunity should be adjudicated by the federal court. LECG also stated that it would not be submitting any jurisdictional brief in response to the Court's order. *Letter from John F. Cambria to the Honorable Norma Kennedy and the Honorable Margaret Abrams dated September 25, 2006, Brady Dec.* at Att. 30.

27. The parties do not agree that the issue of sovereign immunity can or should be adjudicated in federal court. The limited waiver of sovereign immunity made by the Nation's Council with respect to the federal court action makes plain the Nation's position that this Court

9

is the proper forum to adjudicate the issue of sovereign immunity raised in both actions. *See Jurisdictional Brief* at 13-14; *Seneca Nation of Indians' Answer, LECG, LLC v. The Seneca Nation of Indians, Case # 1:06-CV-01303 (D.D.C. Sept. 12, 2006), Brady Dec.* at Att. 31; *Resolution of the Council of the Seneca Nation of Indians Re: To Authorize Legal Defense in Action by LECG Against the Seneca Nation of Indians* (Aug. 12, 2006), *Brady Dec.* at Att. 32.

28. On October 25, 2006, the Nation voluntarily discontinued this action as against JAMS. Such discontinuance was approved by the Court by order dated November 27, 2006.

29. LECG has had a full and fair opportunity to appear in this action and to submit briefs addressing the jurisdictional issues presented and has consciously and with the advice of counsel elected not to do so.

## CONCLUSIONS OF LAW

1. A live controversy exists between the parties and this action is not moot because both the Nation and LECG continue to seek permanent relief of an identical nature with respect to the Nation's alleged waiver of sovereign immunity and obligation to arbitrate, and because the parties continue to dispute the appropriate forum for resolution of these issues. *See* FOF 18-19, 22, 26-27.

2. As a matter of Nation law, this Court has jurisdiction over the subject matter of this civil action for declaratory and injunctive relief because it arises within the Territories of the Seneca Nation, because it involves a corporation conducting business within the Territories, namely LECG, and because the Nation is a party to the action. *See* FOF 8-19; CPR § 2-101; CPR § -102; CPR § 2-107(a); CPR § 2-108(a).

3. As a matter of federal law, this Court has subject matter jurisdiction over the Nation's claim against LECG because LECG voluntarily engaged in a commercial relationship with the

10

Nation through a course of commercial dealing in which it performed auditing services in the Nation's Territories in connection with the Nation's confidential internal investigation of the Nation's Gaming Companies, and because there is a strong nexus between that commercial relationship and the Court's exercise of jurisdiction over the Nation's claim. *See* FOF 2-4, 8-19; *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 655-56 (2001); *Montana v. United States*, 450 U.S. 544, 565-66 (1981).

    4. This Court also has jurisdiction over the Nation's claim as a matter of federal law because LECG's conduct threatens and directly affects the Seneca Nation of Indians' political integrity and economic security, and because the Court's exercise of jurisdiction is necessary to protect the Nation's right to make its own laws and be ruled by them. *See Strate v. A-1 Contractors*, 520 U.S. 438, 459 (1997); *Montana*, 450 U.S. at 565-66. These conclusions are predicated upon the following determinations:

    a) the Nation's sovereign immunity, which LECG seeks to pierce, *see* FOF, 6, 16, goes to the core of the Nation's political existence, *see Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754-59 (1998);

    b) issues of Nation law predominate in this dispute, which issues include whether Sheppard Mullin was vested with authority to bind the Nation to arbitrate disputes with LECG via the letter agreement and whether the letter agreement effected a valid waiver of the Nation's sovereign immunity under Nation law, *see* FOF, 19, 22, and it is appropriate for this Court to adjudicate those issues;

    c) both the Nation and the United States have a powerful interest in the Nation's gaming activities and the goals of self-government and economic self-sufficiency that those activities advance, *see* FOF 1-2, *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216-19

(1987), and *Cabazon Band of Mission Indians v. Wilson*, 37 F.3d 430, 433-35 (9th Cir. 1994), and LECG's conduct in seeking to use the Resolution passed by the Nation's Council (intended to effect an internal investigation of the Nation's Gaming Companies) to pierce the Nation's sovereign immunity and to reach over $800,000 in Nation assets threaten those goals, *see* FOF 2-4, 6, 16.

5. As a matter of Nation law, the Court has personal jurisdiction over LECG for purposes of this action because LECG conducted business within the Nation's Territories over a period of several months, and this action arises from those activities. *See* FOF 8-19; CPR § 2-104(b)(2); CPR § 2-105(a)(1).

6. As a matter of federal law, the Court has personal jurisdiction over LECG for purposes of this action because LECG has minimum contacts with this forum, this action arises from those minimum contacts, and the maintenance of this action does not offend notions of fair play and substantial justice. The Court specifically finds that LECG availed itself of the benefits and protections of Nation law when it conducted business activities within the Nation's Territories over a period of several months and that this forum has a compelling interest in adjudicating this dispute. *See* FOF 8-19, 22; COL 4; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-20 (1945).

It is so ORDERED.

It is further ORDERED that the parties shall appear at a term of this Court to be held at the Seneca Nation Judicial Complex, Center Road, Allegany Territory, Salamanca, New York, on November 19, 2007 at 1:00 AM/PM, at which time the Court will hear the parties' respective arguments regarding the terms of an order which will be entered by the Court

12

scheduling further proceedings, including discovery, if any, dispositive motions and the trial of this action.

Signed this 14 day of September, 2007.

*Norma Kennedy*
Senior Peacemaker

*Hon. Marilyn George*
Peacemaker

13