UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LECG, LLC | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 06-1303 (RCL) |
|  | ) |
| THE SENECA NATION OF INDIANS | ) |
|  | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Now before the Court comes defendant's motion [12] to stay. Upon consideration of the motion, the plaintiff's opposition, the reply, the applicable law, and the entire record herein, the Court concludes that defendant's motion will be GRANTED. The parties shall notify the Court within 10 days after the exhaustion of tribal court proceedings that are currently pending before the Seneca Nation of Indians Peacemakers Court, Allegany Territory ("Peacemakers Court"), at which time proceedings in this Court may resume.

Having concluded that a stay of the proceedings is appropriate, plaintiff's motion [18] for judgment on the pleadings will be DENIED, without prejudice to filing a new motion after the stay is lifted. The defendant's motion [19] to continue the date for opposing plaintiff's summary judgment motion will be DENIED as moot.

**I.     BACKGROUND**

On November 13, 2004, the Council of the Seneca Nation of Indians ("Nation") adopted a resolution appointing Roscoe C. Howard, Jr. and the law firm of Sheppard Mullin Richter & Hampton LLP ("Sheppard Mullin") as independent counsel to review financial transactions and other issues regarding the construction, financing, management, and operation of the Nation's New York casino business. (Council Resolution, Ex. 1 to Kanji Decl.) This resolution gave Sheppard Mullin the authority to "retain qualified forensic auditors and such other consultants as the Firm may deem necessary . . . ." (*Id.*) Sheppard Mullin then—acting on behalf of the Nation—contracted with plaintiff LECG to provide forensic accounting and consulting services related to Sheppard Mullin's investigation. (LECG Engagement Ltr., Ex. 4 to Kanji Decl.) LECG's engagement letter stated that Sheppard Mullin and the Nation accepted LECG's "standard commercial terms," a copy of which were included in the letter. (*Id.* at 1.) One such term was an alternative dispute resolution clause that purported to bind the parties to arbitrate any disputes that could arise in connection with the contract. (*Id.* at 5.)

From late 2004 until April 2005, LECG provided services under its contract for which the Nation issued checks totaling approximately $270,000. (Ex. 11 to Kanji Decl.) In April 2005, LECG issued a report summarizing the results of its investigation. This report contained errors which Sheppard Mullin considered "clerical" but which Seneca determined were "beyond significant." (Ex. 12 and 14 to Kanji Decl.) Following this incident, the Nation ceased paying LECG's invoices as they became due.

On October 27, 2005, LECG demanded arbitration before Judicial Arbitration & Mediation Services, Inc. ("JAMS") seeking payment of $815,508.62 in outstanding invoices.

(Ex. 15 to Kanji Decl.) Citing the Nation's sovereign immunity, its Department of Justice does not recognize JAMS's jurisdiction over this dispute. (Porter Ltr., Ex. 17 to Kanji Decl.) The Nation asserts that to waive sovereign immunity, it must expressly do so, and that Sheppard Mullin did not have the authority to unilaterally waive the Nation's sovereign immunity. Consequently, on January 23, 2006, the Nation filed suit against JAMS and LECG in Peacemakers Court seeking to enjoin arbitration proceedings against the Nation based upon its assertion of sovereign immunity. (Peacemakers Court Compl., Ex. 21 to Kanji Decl.) LECG has not appeared in the Peacemakers Court proceedings.

On July 24, 2006, LECG filed suit in this Court seeking declaratory judgment that the Nation waived its sovereign immunity and is subject to arbitration as specified in LECG's engagement letter. (Amended Compl. at 8–9.) The Nation has expressly waived its sovereign immunity for the limited purposes of resolving the claims specified in LECG's complaint filed in this Court. (Answer at 10–11.)

Citing the parallel Peacemakers Court proceedings, on October 3, 2006, LECG filed a motion [12] to stay proceedings in this Court pending the exhaustion of proceedings in the Nation's court system. On September 14, 2007, the Peacemakers Court ruled that it had jurisdiction over the dispute and scheduled a status conference for November 19th for the purpose of "scheduling further proceedings, including discovery, if any, dispositive motions and the trial of this action." (Peacemakers Court Findings of Fact and Conclusions of Law, Sept. 14, 2007.) No appellate proceedings have occurred in the Nation's three-tiered court system. *See Kirkpatrick v. Kirkpatrick*, 282 F. Supp. 2d 613, 614 (N.D. Ohio 2003) (indicating that the

Nation's court system consists of three levels: the Peacemaker's Court, the Seneca Nation of Indians Court of Appeals, and the Seneca Nation Supreme Appellate Court).

## II.     ANALYSIS

### A.     Applicable Law

#### 1.     Tribal Exhaustion Doctrine

The tribal exhaustion doctrine governs federal cases filed by parties when parallel proceedings are pending in Indian tribe courts. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985). In *National Farmers*, an Indian tribe member sued a state school district in tribal court regarding injury claims stemming from a motorcycle accident. *Id.* at 847. The school district did not file an answer in tribal court, which caused default judgment to be entered in favor of the tribe member. *Id.* at 847–48. The school then filed a motion for a temporary restraining order in federal district court. *Id.* at 848. The Supreme Court held that "[u]ntil petitioners have exhausted the remedies available to them in the Tribal Court system, it would be premature for a federal court to consider any relief." *Id.* at 857. Several factors support requiring "the federal court [to stay] its hand" by not addressing the "merits or any question concerning appropriate relief" until "after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made." *Id.* at 856–57. Such factors include: the orderly administration of justice; the avoidance of the "procedural nightmare" that could arise with competing parallel litigations; and, the policies of tribal self-government and self-determination. *Id.*

In *Iowa Mutual*, the Supreme Court again considered exhaustion of tribal court remedies. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9 (1987). There, an action regarding a disputed insurance claim was filed in Blackfeet Tribal Court and that court found that it had jurisdiction over the suit. *Id.* at 11–12. Before any appellate proceedings had taken place in Tribal Court, Iowa Mutual Insurance Company filed suit in federal district court seeking declaratory relief. The Supreme Court decided the question of whether a federal court could exercise its jurisdiction before the tribal court system had an opportunity to determine its own jurisdiction. Relying on *National Farmers Union*, the Court elaborated upon the exhaustion doctrine holding that:

> [t]he federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts. At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts. In this case, the Tribal Court has made an initial determination that it has jurisdiction over the insurance dispute, but Iowa Mutual has not yet obtained appellate review . . . . Until appellate review is complete, the Blackfeet Tribal Courts have not had a full opportunity to evaluate the claim and federal courts should not intervene.

*Id.* at 16–17. District courts should avoid permitting "unconditional access to the federal forum," which would "place it in direct competition with tribal courts, thereby impairing the latter's authority over reservation affairs." *Id.* at 16. Additionally, if a tribal appeals court upholds a lower court's determination that the tribe's courts have jurisdiction, only then may a petitioner challenge that ruling in federal district court. *Id.* at 19.

### 2.     **Exceptions to Exhaustion Doctrine**

There are four recognized exceptions to the general rule that exhaustion of tribal remedies is required: (1) when assertion of tribal jurisdiction is to harass or is in bad faith; (2) when "the action is patently violative of express jurisdictional prohibitions;" (3) "where

exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction;" and, (4) when tribal jurisdiction serves no other purpose than delay. *See Strate v. A-1 Contractors*, 520 U.S. 438, 459 n.14 (1997) (formulating the fourth exception); *Nat'l Farmers*, 520 U.S. at 857 n.21 (setting out the first three exceptions).

**B.     Application of Legal Standard**

**1.     Exhaustion Has Not Occurred**

For the reasons set forth below, the tribal exhaustion doctrine requires this Court to stay proceedings until the appeals process in the Nation's courts has concluded.

LECG filed suit in this Court seeking enforcement of a binding arbitration provision when an action involving the same issues had been pending in Peacemakers Court for six months. At this time, although the Peacemakers Court has found that it has jurisdiction over the dispute, no appellate proceedings have yet occurred in the Nation's courts. This Court cannot say—based on the Peacemakers Court's decision that it has jurisdiction—that the tribal process has been exhausted. *See Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe*, 117 F.3d 61, 68 (2nd Cir. 1997) (stating that whether the decision by the tribal court constitutes exhaustion depends on the procedures available at tribal law to challenge the ruling and that a tribal court's assertion of jurisdiction alone was insufficient proof to constitute exhaustion). Rather than pursuing its jurisdictional objections in Peacemakers Court or the Nation's appellate courts, LECG has thus far not participated in those proceedings and instead seeks to assert its challenge in this Court. Such a strategy that, if successful, would bypass the procedural rules of the Nation's judicial system is precisely the type of maneuver that the tribal exhaustion doctrine prohibits in an effort to develop an entire tribal legal system. *See Iowa Mut.*, 480 U.S. at 16–17

(explaining that exhaustion includes tribal appellate review and furthers the development of tribal court systems). Additionally, this dispute concerns an investigation of the Nation's casino operations that take place on Nation lands, a further indication that application of the exhaustion doctrine is appropriate. *See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 32 (1st Cir. 2000) (stating that contract disputes between a tribe and an entity doing business with it, concerning the disposition of tribal resources, are tribal affairs where the exhaustion doctrine operates).

### 2. Arbitration Clause Does Not Negate Exhaustion Requirement

Although this Circuit has not ruled on the issue of the tribal exhaustion doctrine in the context of an arbitration clause, several other circuits have found that such clauses do not negate the exhaustion requirements. *See Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 851–52 (8th Cir. 2003) (holding that "exhaustion should be required when a party tries to avoid tribal court jurisdiction by seeking an order to compel arbitration in federal court"); *Bank One, N.A. v. Shumake*, 281 F.3d 507, 509 (5th Cir. 2002) (finding that the tribal exhaustion doctrine applies in suits to compel arbitration); *Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe*, 117 F.3d 61, 64–69 (2nd Cir. 1997) (denying motion to compel arbitration and staying proceedings in order to require tribal exhaustion); *Stock West Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228–30 & n.16 (9th Cir. 1989) (requiring exhaustion after refusing to find that the federal Arbitration Act deprives tribal courts of jurisdiction). Accordingly, this Court finds that the arbitration clause in LECG's engagement letter is insufficient to negate the requirements of the tribal exhaustion doctrine. Upon

exhaustion of tribal remedies, this Court may have the opportunity to determine whether the arbitration clause in question is enforceable, but that time has not yet arrived.

### 3. Exceptions to Tribal Exhaustion Doctrine Are Not Applicable

This Court finds that none of the four exceptions to the tribal exhaustion doctrine are applicable to the current case. First, the record before the Court does not offer sufficient evidence of bad faith or intent to harass by the Peacemakers Court's assertion of jurisdiction. Additionally, there is no evidence that that court's assertion of jurisdiction is "patently violative of express jurisdictional prohibitions." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857 n.21 (1985); *see Basil Cook*, 117 F.3d at 66 (stating that this exception only applies where federal law has divested the tribe of an aspect of sovereignty).

Regarding the futility exception, although the Nation's courts may have ruled repeatedly that the Nation and its subdivisions have sovereign immunity, that does not constitute futility for the purposes of the tribal exhaustion doctrine. *See Nat'l Farmers*, 471 U.S. at 857 n.21 (explaining that the futility exception applies where there is inadequate opportunity to challenge the tribal court's jurisdiction). Here, no evidence has been presented that indicates that LECG is deprived of the opportunity to challenge jurisdiction within the Tribe's court system.

Nor does this Court find that the exhaustion requirement serves "no other purpose than delay" in this case. *See Strate v. A-1 Contractors*, 520 U.S. 438, 459 n.14 (finding no other purpose than delay when it was plain that no federal grant provided for tribal authority over the conduct in question).

**III.    CONCLUSION**

Upon full consideration of the parties' filings, applicable law, and the record herein, this Court will GRANT the Seneca Nation of Indians' motion to stay proceedings. It is premature for this Court to determine the underlying question of whether the Nation waived sovereign immunity when Sheppard Mullin entered a contract that purported to bind both Sheppard Mullin and the Nation to resolve disputes via arbitration. Proceedings in this Court shall remain stayed until appellate remedies in the Nation's court system have been exhausted.

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on October 31, 2007.